W. R. Wicks and Irene C. Wicks, appellees, v. Iowa State Highway Commission and State of Iowa, appellants.

No. 50808.

(Reported in 119 N.W.2d 781)

FEBRUARY 12, 1963.

Evan Hultman, Attorney General, of Des Moines, C. J. Lyman, Special Assistant Attorney General, of Ames, Henry M. Keyes, State Counsel, Iowa State Highway Commission, of Ames, and William L. Meardon, of Iowa City, for appellants.

Messer & Cahill, Swisher & Swisher and Marion R. Neely, all of Iowa City, for appellees.

SNELL, J.—Plaintiffs W. R. Wicks and Irene C. Wicks, husband and wife, appealed to the district court from the assessment of damages for the taking by eminent domain of part of their property and appurtenances thereto for highway improvement purposes. From the award following trial by jury defendants (for convenience herein called "the commission") have appealed to us.

Plaintiffs are the owners of a corner lot at the intersection of

Highways Nos. 1, 6 and 218 in Iowa City. Located thereon is a motor-vehicle service station selling Shell products.

Incident to a highway improvement project defendant commission condemned a small area and all rights of direct access except two commercial entrances.

On appeal defendants claim error in submitting to the jury any question of damage for reductions in access, error in rulings on evidence and improper instructions.

While the difference between plaintiffs' and defendants' valuation witnesses was as usual in such cases extreme, the reasonableness of the award is not the question before us.

I. Defendants claim error in allowing the jury to consider, as an element of damage, the reduction in access to plaintiffs' property. Defendants argue that the designated access remaining after condemnation constituted free, reasonable and convenient access as a matter of law. Prior to condemnation plaintiffs' corner lot had 125 feet frontage on Riverside Drive (east side of property) and 152 feet frontage on the south side of the property with free access at all points. After condemnation access was limited to an opening 35 feet wide on the east side and to an opening 44½ feet wide on the south side. There was evidence of substantial impairment of the "free and convenient" access previously existing.

This is an action at law to determine the just compensation due plaintiffs because of the taking of property through the State's power of eminent domain. It is not a taking through exercise of police power. "Generally, a taking through exercise of the police power is noncompensable; through eminent domain it is compensable." Warren v. Iowa State Highway Commission, 250 Iowa 473, 478, 93 N.W.2d 60, 63.

The problem of access has been considered in recent decisions. Iowa State Highway Commission v. Smith, 248 Iowa 869, 82 N.W.2d 755, 73 A. L. R.2d 680; Wilson v. Iowa State Highway Commission, 249 Iowa 994, 90 N.W.2d 161; Warren v. Iowa State Highway Commission, supra; In re Condemnation of Certain Land (In re Primary Road No. 141), 253 Iowa 1130, 114 N.W.2d 290.

It should be noted that the Smith, the Warren and the

Primary Road No. 141 cases were tried to the court. Only the Wilson case was tried at law to a jury. The court's finding of fact in nonjury cases does not necessarily mean that there would be no jury question in another case.

The Smith case, supra, was an action by the Highway Commission for a declaratory judgment involving limitations established by the commission and the City of Des Moines. The defendants were the owners of properties abutting a controlled access highway. The plaintiffs sought a declaratory judgment that limitations on access established by the commission and the prohibition of vehicular crossings, left turns and U-turns, except at designated points, did not constitute taking of property for which compensation must be paid. Previously, defendants had unlimited access. The commission sought limitations thereof.

In the opinion it is said on page 874 of 248 Iowa:

"It is now well settled in Iowa and we think in most jurisdictions that real property consists not alone of the tangible thing but also of certain rights therein sanctioned by law, such as the right to access—ingress and egress. It is clear owners of property abutting a street or highway cannot be deprived by public authorities of all access thereto without just compensation. As the commission concedes, such deprivation amounts to a taking of the property. * * * we have said several times that the destruction of the right of access or the substantial or material impairment or interference therewith by the public authorities is a taking of the property."

Under the authorities cited by the court the question for determination was whether there was such a substantial impairment or interference with the right of access as to constitute a taking of the property for which compensation should be paid. There was no receding from the precedents, but they were not regarded as controlling under the stipulated facts. The case recognizes the rule that an owner is not entitled as against the public to access to his land at all points between it and the highway. If he has free and convenient access to his property and the improvements on it, and his means of ingress and egress are not substantially interfered with by the public, he has no cause for complaint.

It was held that in determining whether limitations placed by the commission upon the number and location of access locations are reasonable, the judgment of the commission is entitled to deference because of its superior knowledge of highway and traffic matters. But, the commission's authority is not above that of the court.

We quote: "No hard-and-fast rule can be stated as to whether an abutting property owner has been denied access that is reasonable or, as we have said, 'free and convenient.' In most instances the question is one of fact, not of law, and its determination depends largely upon the evidence in the particular case." (Citations) See page 877 of 248 Iowa Reports.

Under the evidence there being considered, the court found as a matter of fact that the limitations were reasonable. The opinion does not say that the question should be determined as a matter of law.

The Wilson case, supra, was an appeal from the setting aside of the jury verdict in a law action and was decided because of a showing that the jury had considered elements of damage withdrawn from consideration. The case does, however, reaffirm the holdings in the Smith case.

In the Primary Road No. 141 case, supra (at page 1136 of 253 Iowa), it is said:

"No hard-and-fast rule can be stated as to whether an abutting property owner has been denied reasonable access to his property, or, as we have said, 'free and convenient' access. [Citations]. Only after consideration of the vital facts can this be determined. This matter is fully discussed in the latter two highway commission cases and it need not be repeated here. Nevertheless, in the Smith case appears a significantly applicable statement, 'In most instances the question [denial of reasonable access] is one of fact, not of law, and its determination depends largely upon the evidence in the particular case.' (Citations) Therefore, whether plaintiffs have suffered such a denial here will depend upon the evidence, and a motion to strike the allegations in that regard was premature. It is true that, pursuant to hearing the evidence in a particular case, the court may determine as a matter of law that the access provided was reasonable

and, therefore, there was no taking for which compensation must be made, but we have clearly indicated that, unless the question is free of doubt, it is a question for the jury."

In the case at bar we cannot say that the reasonableness of the access after condemnation was so free of doubt as to require decision by the court as a matter of law that there was no compensable damage resulting therefrom.

There was no error in the submission of this issue to the jury.

■ II. Defendants claim error in instructing the jury that evidence of comparable sales might be considered as substantive evidence of the value of the condemned property.

The trouble in this particular is in the lack of evidence of comparable sales.

R. P. White, called as a witness by plaintiffs, said that he was acquainted with the sales of some of the oil stations in the Iowa City area, but he gave no testimony as to such sales.

James Parden, called as a valuation witness by the plaintiffs, testified as to building activity. He mentioned building by Texaco and the Standard Station expanding and that new stations built in Iowa City cost "upward of $100,000." He thought plaintiffs' station worth more than the new stations that cost $100,000. He did make comparisons as to the access to other stations but said nothing about sale prices.

James W. Pearson, called as witness on behalf of defendants, qualified as an experienced real-estate broker, and gave his opinion as to valuation before and after condemnation. In cross-examination he said he was familiar with other oil stations in Iowa City, but there is only one that he knew of that had been sold and that is the Texaco station about a quarter of a mile toward town from plaintiffs' property. He considered the production of that station in arriving at the valuation of the Wicks station and he said, "I understand the transfer value of the Cannon Station (Texaco) was for $75,000."

In making his comparison he picked four stations: Sinclair Station that cost $60,250 to buy the land and to build; the Conoco Station constructed at a cost for land and improvements of $59,000; the Kirkwood Super Service built in 1957 at a cost of

$45,000, and another station built at a cost of "something like $94,000."

Samuel B. Whiting, called as a witness on behalf of the defendants, qualified as an experienced real-estate appraiser. He appraised the property by three different methods. He took a summation approach by measuring the building and computing the cost in comparison with the cost of other buildings. He also appraised it on the basis of income and also attempted to find some good comparable sales "but there didn't seem to be any, however, we did find several new stations have been established where we could ascertain the cost of the buildings and the land that was assembled and leased to oil companies, which pretty well established what this one was worth."

Prior to the decision in Redfield v. Iowa State Highway Commission, 251 Iowa 332, 99 N.W.2d 413, 85 A. L. R.2d 96, it had been the rule that sale prices for similar and comparable tracts in the same general vicinity might be inquired into only on cross-examination of expert value witnesses to test their knowledge and competency. The Redfield case overruled prior holdings and established the rule that evidence of such sales might be received as substantive proof of the value of the property being taken.

The question as to what constitutes comparable sales was considered in Iowa Development Co. v. Iowa State Highway Commission, 252 Iowa 978, 108 N.W.2d 487, and in the second Redfield case, 252 Iowa 1256, 110 N.W.2d 397. In each of these cases there was a reversal because of evidence not shown to be sufficiently comparable to the property being condemned.

In the case before us plaintiffs offered no evidence of comparable sales. They did offer some testimony as to cost of construction of new stations that had not yet developed a business and still have "to make it."

In cross-examination of defendants' witnesses the sale price and production of another station ¼ mile toward town was mentioned but there was no other showing of comparability. Construction costs were also brought out during cross-examination. Defendants argue that this was improperly considered because it was brought out in cross-examination.

In the Iowa Development Company case, supra, on page 987 of the Iowa Reports it is said:

"The effect of our Redfield decision is that evidence formerly receivable only on cross-examination of value witnesses, for a limited purpose, is now admissible also on direct examination of witnesses with knowledge of the facts and it may also be considered on the question of value of the property under condemnation. *So it is unimportant here whether evidence of other sales to which we have referred, was brought out on direct or cross-examination except in determining whether the trial court considered it in reaching its decision.* [Emphasis supplied.] It seems clear evidence of the sales heretofore listed was considered. It was developed on cross-examination. We think it was improperly considered because of insufficient similarity with the development company's tract and, as to at least some of the sales, with Mrs. Murphy's tract."

Defendants attribute undue importance to the words "except in determining whether the trial court considered it in reaching its decision", and the words "It was developed on cross-examination", in the foregoing quotation. We do not agree that testimony developed on cross-examination cannot be considered. The distinction between questions permissible on direct examination and cross-examination has now been abrogated in this field and as shown by the quotation, supra, the evidence was rejected not because it was brought out on cross-examination but because of insufficient similarity with the tract being considered. In the case at bar the evidence was inadmissible because there was no showing of comparability and not because it was developed on cross-examination.

Evidence of construction costs might well be one of the elements considered by an appraiser in determining value, but it is not a sale price.

The court instructed the jury as follows:

"You are told that evidence has been admitted in this case with respect to the sale prices of other similar properties in the vicinity of the property involved. If you find from the evidence that these other properties which have been testified about were comparable in size, use, location and character of the land and

time, mode and nature of the sales, you may give such evidence such consideration as you believe it entitled to as bearing upon the substantive evidence in this case.

"You are further told that another purpose of permitting such evidence in the case was for the purpose to test the knowledge and competency of the witnesses giving such evidence, and the weight and value of their opinions."

The error was not in the wording of the instruction but in the assumption that there was evidence of sales of similar properties. The giving of the instruction when there was no evidence in the record relative to comparable sales opened the door to unwarranted speculation by the jury and permitted the jury to consider the building costs of service stations as market value.

III. Defendants urge separate but closely related alleged errors in the admission of the testimony of valuation witnesses, the refusal of the court to strike such testimony and the instruction to the jury on measure of damage when the ownership interest is subject to leasehold interests.

Plaintiffs were not the operators of the business located on the property.

The property was subject to an original lease to Shell Oil Company for ten years beginning in 1955 with a renewal option for an additional five years. The lease was amended so that there are now two additional five-year options which if exercised by the Shell Oil Company will extend the lease until 1980. Monthly rental is $292 until 1970 and between 1970 and 1980 the monthly rental is subject to adjustment to a sum equal to 1/12th of 10% of the appraised value of the premises. There were also subleases hereinafter discussed.

The witness, R. P. White, stated that in considering before-and-after values he did not consider whether or not there were any outstanding leases and that he appraised the property as being free of any leases or encumbrances.

The witness, James Parden, testified that in appraising the property he did not make inquiry as to any leases and admitted that the property being subject to leases until 1980 would affect the market value.

The plaintiff, W. R. Wicks, admitted in cross-examination that in his estimate of the value of the property he considered more than the owner's interest therein.

The court instructed the jury on the measure of damage as follows:

"You are instructed that there is but one thing for you to determine by your verdict in this case, and that is, what was the amount of damages sustained by the plaintiffs because of the taking of said property above described, through said condemnatory proceedings by the State of Iowa, the defendant. And in this connection you are instructed that the measure of said damages sustained by plaintiffs because of the taking of said property in question, is the difference between the fair and reasonable market value of the said plaintiffs' property as a whole immediately before and immediately after the appropriation of the land in question by the State, not taking into consideration any advantages or benefits, if any, that may result to the plaintiffs on account of the improvement, if any."

The law is well settled that the measure of damage is the difference between the fair and reasonable market value of the property before the appropriation and immediately after the appropriation. In determining this difference in value it is necessary that the condemnees' interest in the property be disclosed. Any estimate of damage based upon an improper assumption of the condemnees' interest in the property would be improper.

It is well established that a leasehold interest is property and when taken in the exercise of eminent domain is entitled to compensation. See Korf v. Fleming, 239 Iowa 501, 32 N.W.2d 85, 3 A. L. R.2d 270.

It cannot be claimed with any degree of plausibility that a title or right subject to an outstanding lease until 1980 is a free, unencumbered or whole estate. In 29 C. J. S., Eminent Domain, section 136, page 972, it is said: "The fact that the landowner has given a lease on the property * * * may and should be considered."

When land taken by eminent domain is already subject to a servitude, if the existence of the servitude decreases the market value of the fee, it must be taken into consideration in de-

termining the amount of the award. 18 Am. Jur., Eminent Domain, section 248. A lease running until 1980 cannot be ignored.

This case was not tried on any theory of apportioning the damage to the several interests in the property among the owners of the various interests. The interests and rights of others in and to the property were subject to separate condemnation and determination of damage.

 The only question for determination by the jury was the damage suffered by Mr. and Mrs. Wicks. When it appeared that their interest in the property was subject to other interests evidence confined to damage to the whole estate was improper.

The motion to strike the improper testimony should have been sustained. The instruction on measure of damage should have limited the allowance to the damage to plaintiffs' interest in the property.

 IV. Defendants claim error in the admission of testimony relative to gross sales and gallonage of the station while operated by plaintiffs' sub-sublessee.

Plaintiffs' evidence was that the leasing arrangement was common in the oil industry, but for the purposes of this case we have a rather fictitious situation. Plaintiffs as individual owners of the real estate leased to Shell Oil Company. Wicks Oil Company is a separate corporation wholly owned by Mr. and Mrs. Wicks except for a share or two given to their children. Shell Oil Company leased the property back to Wicks Oil Company as distributor of Shell products for $292 rent per month. This was the same amount as paid by Shell Oil Company to Mr. and Mrs. Wicks. Thus, plaintiffs as individuals received rent and the corporation owned by them paid rent. Wicks Oil Company then subleased to Paul Christian as actual operator of the station at a rental based on the number of gallons of gasoline sold.

Plaintiffs' income as shareholders in Wicks Oil Company would be influenced by business volume.

Testimony was admitted as to the volume of business done during various months and years.

The lease between plaintiffs and Shell Oil Company contains

a cancellation clause under which Shell Oil Company but not plaintiffs may cancel the lease.

While profits as such do not determine the value of the real estate wherein the business is conducted, the amount of business done at the location might well have a bearing on the possibility of cancellation of the lease and the rental value of the property under the lease between 1970 and 1980.

While testimony as to gallonage is rather remote in considering the present value of plaintiffs' interest in the real estate, defendants are not upon a sound foundation in complaining relative thereto, because it appears that defendants' valuation witnesses also considered the production of the station in determining its value.

We caution against the use of remote and speculative items, but would not reverse in this case because of the admission of this evidence.

The existence of Wicks Oil Company as a separate legal entity seems to have been ignored by plaintiffs in thinking of their damage. It is, of course, true that as owners of Wicks Oil Company what was good or bad for the Oil Company was good or bad for them. As the rent collected by Wicks Oil Company from Paul Christian, the station operator, depended on business volume, gallonage was important to Mr. and Mrs. Wicks. The importance, however, was incident to their ownership of shares in the Oil Company and only indirectly to their ownership of the title to the real estate.

The Wicks Oil Company was a separate, independent legal entity of plaintiffs' creation. Why plaintiffs created a corporate entity to act as sublessee from Shell Oil Company and as lessor to Paul Christian does not appear but having created a corporate entity they may not use it for business convenience and ignore it in determining damage.

In determining damage because of taking of property and property rights the true situation should be disclosed and only the actual interest of the owners used in determining compensation.

There is no question before us as to the rights, if any, of Wicks Oil Company and we express no opinion relative thereto.

V. Defendants complain because the district court file in the case of Shell Oil Company v. Iowa State Highway Commission was not admitted into evidence. There was no error. There was nothing to indicate any materiality. The leasehold interest of Shell Oil Company was in evidence and was admitted. The court file was unnecessary to prove that fact and it is not claimed that it was offered for any other purpose. We assume that the file related to a condemnation appeal by Shell Oil Company. Disclosures to the jury as to the outcome in that case would be improper in the instant case.

For the reasons indicated in Divisions II and III the case is—Reversed and remanded.

GARFIELD, C. J., and HAYS, THOMPSON, PETERSON, THORNTON, MOORE and STUART, JJ., concur.