IN RE CONDEMNATION OF CERTAIN LAND.

(Primary Road No. 141 in Carroll County, Project No. FN-334)

MARY MARGARET KUKER et al., appellees, v. IOWA STATE HIGHWAY COMMISSION, appellant.

No. 50997.

(Reported in 127 N.W.2d 566)

APRIL 8, 1964.

Evan Hultman, Attorney General, C. J. Lyman, Assistant Attorney General, A. Jackson Allen, State Counsel, and Minnich & Minnich, of Carroll, for appellant.

Clark & Clark, of Ames, and Leighton A. Wederath, of Carroll, for appellees.

MOORE, J.—This case involving condemnation of part of plaintiffs' commercial property for improvement of Highway No. 141 along the south side of Manning is now before us for the second time. In Kuker v. Iowa State Highway Commission, 253 Iowa 1130, 114 N.W.2d 290 (April 3, 1962), we reversed the lower court's ruling striking plaintiffs' allegations of denial of reasonable access and loss of property interest in filling station pumps and ramps which improvements plaintiffs alleged were

made under a license from the town of Manning. It is now before us on defendant's appeal following jury trial, an award of $150 and the trial court's sustaining of plaintiffs' motion for a new trial.

July 11, 1961, defendant (herein called "commission"), incident to a highway improvement project, condemned a portion of plaintiffs' land and all rights of direct access except two commercial entrances. The improvement had been completed before the trial of this case. It consisted of some change of grade for a bridge approach and the widening of highway 141 from two to four lanes.

Plaintiffs' property, which they acquired upon the death of Jacob Kuker, their husband and father, on November 20, 1957, abuts highway 141 in Manning for 383 feet along its southern boundary. At its widest point it is 184 feet north and south.

Jacob Kuker acquired this property in the early 1930s and soon began constructing buildings thereon. First a filling station was erected to which a garage was later added. The station was located about the center of the south line of the property, approximately 10 feet from the north right-of-way line. A concrete pump stand and driveway were placed south of the station and used to serve automobiles on both sides of the pumps. A concrete drive from the filling station extended into the right-of-way approximately 15 feet.

Next a frame building was built just north of the highway and near the west edge of the Kuker property. It was used as an office and storage building. It was also referred to as the bulk plant. Back of this building large gasoline storage tanks were erected near which later was built a pump house.

The next improvement was an L-shaped building the south extension of which was located east of the filling station and near the east edge of the property. It was used as a cafe. The north and west part of this building was used as two motel units. Later four more motel units were added to the west and partly back of the filling station. Included in the "L" was a two-story structure used as a dining room for the cafe, the motel office and living quarters for the Kukers consisting of five bedrooms, a living room and kitchen.

These several businesses were operated by the Kukers or lessees for many years prior to the condemnation proceedings. Their access was unlimited along 141. It was so used except along the property directly south of the bulk plant. Customers, including those driving large trucks, drove off the pavement to the cafe and filling station at their convenience.

By the condemnation proceedings the commission acquired a triangular piece of ground at the southwest corner of plaintiffs' property. It was 33.9 feet along the highway, 18.22 feet on the western boundary and approximately 35 feet to close the triangle. It also took a temporary easement for the purpose of sloping and grading east and north of the triangular piece which was permanently taken.

The commission also condemned all rights to direct access between the highway and plaintiffs' property except two commercial entrances. Along the highway west of the filling station and east of the bulk plant an access 45 feet in width was allowed. The other was located east of the filling station and west of the cafe. It was 35 feet long.

In making the improvement the pavement was extended the entire width of the right-of-way. It ran up to and along the entire length of plaintiffs' property and was curbed. A drainage flume was built in front of the station. The concrete driveway and ramp lying south of the north highway line which had been used as part of the filling station operation for over 20 years were removed. Cars could only be serviced on the north side of the pumps. The obvious problems and difficulties resulting therefrom are detailed by the evidence. Testimony of plaintiffs' witnesses that semitrucks had difficulty getting to the bulk plant, truck customers were unable to drive close to the cafe and customer traffic congestion and substantial loss of business resulted is undenied.

Plaintiffs' witnesses testified as to the fair and reasonable value of the plaintiffs' property immediately before and after condemnation. The difference of such values is as follows:

| Witness | Before | After | Difference |
|---|---|---|---|
| Mary Margaret Kuker (1) | 60,000 | 30,000 | 30,000 |
| John Shaner (2) | 63,000 | 25,000 | 38,000 |

| | | | |
|---|---|---|---|
| Claus H. Bunz (3) | 65,000 | 25,000 | 40,000 |
| Dr. Robert R. Dappen (4) | 85,000 | 32,500 | 52,500 |
| Merle Stoelk (5) | 75,000 | 30,000 | 45,000 |
| W. H. Rust (6) | 50,000 | 25,000 | 25,000 |

All except Mary Margaret Kuker, one of the plaintiffs, gave opinions after stating sufficient knowledge and experience as landowners or real-estate brokers. No claim is made attacking their qualifications to testify as experts.

The commission used two valuation witnesses, Frank Hoffmann, a Carroll realtor, and Ralph McCord, Carroll building and loan association employee and appraiser. They testified as follows:

| Witness | Before | After | Difference |
|---|---|---|---|
| Frank Hoffmann | 55,000 | 54,850 | 150 |
| Ralph McCord | 58,000 | 57,900 | 100 |

Each testified he considered access to the property was not impaired by the improvement and that plaintiffs had no loss resulting from the removal of the concrete ramp and driveway at the filling station. Each based his opinion only on the taking of the triangular piece of plaintiffs' property.

The trial court's ruling setting aside the $150 jury award and ordering a new trial states several reasons for doing so. They include, (1) the court's opinion instruction 9 in reference to the commission's right to limit access and instruction 17 as to the town's right by ordinance to license use of the street was not sufficiently clear and may have misled the jury, (2) the verdict of $150 shocked the conscience of the court and was wholly inadequate, (3) the jury deliberated only about one and a half hours, (4) newspaper, radio and television publicity referring to statements before the legislature calling condemnation proceedings a "lawyer's bonanza" may have come to the attention of the jurors, (5) the court's conclusion that substantial justice had not been done.

In our recent case, Larew v. Iowa State Highway Commission, 254 Iowa 1089, 120 N.W.2d 462, we cite and review our prior holdings which establish several general principles.

■ It was the right and duty of the trial court to scan the course of the trial and the verdict returned. If for any reason supported by the record he concluded justice had not been done he had the unquestioned right to order a new trial, even though such reason did not in itself amount to reversible error.

■ A new trial should be granted when the trial court feels the verdict fails to administer substantial justice or it appears the jury has failed to respond truly to the real merits of the controversy.

■ The trial court has wide discretion in granting a new trial with which we interfere reluctantly and only on a clear showing of abuse.

The commission makes no assignment of error or argument claiming the reasons cited by the trial court for granting a new trial are unsupported by the record. Neither is it claimed the trial court abused its discretion.

The commission's first assignment of error is: "A party, who is satisfied with the verdict, may show that upon the face of the record, it is entitled to the verdict." The other assigned errors assert the court erred in: submitting to the jury the question of damage resulting from taking out the filling station ramp and driveway, failure to give certain requested instructions, excluding evidence of resolutions between the commission and Manning, not declaring as a matter of law plaintiffs were given free and convenient access to their property, excluding certain offered impeachment evidence and admitting certain evidence over proper objections.

■ We are firmly committed to the view that the successful party may, without appealing, save the judgment if error was committed against him which, if corrected, will make the result reached in the trial court a right result. Thompson v. Butler, 223 Iowa 1085, 1092, 274 N.W. 110, 113; McCuddin v. Dickinson, 230 Iowa 1141, 1143, 300 N.W. 308, 309; Brandt v. Schucha, 250 Iowa 679, 682, 96 N.W.2d 179, 181, and citations; Kroblin Refrigerated X Press, Inc. v. Ledvina, 256 Iowa 229, 127 N.W.2d 133.

■ However, we are unable to understand how this rule

has application here. The commission admits plaintiffs are entitled to an award in some amount to be fixed by the jury. Assuming, arguendo, the trial court committed one or more of the assigned errors, how does that make the $150 award a right result? Such error might require a new trial and that is what the trial court granted.

We hold the trial court's ruling must be affirmed.

Some of the assigned errors call to our attention questions which may be met on retrial of this case. We have therefore decided to discuss them.

■ The commission's second assignment of error claims the trial court should have withdrawn from the jury any damages resulting from the taking of certain rights and uses in the public right-of-way allegedly acquired under the provisions of Manning ordinance No. 115. The commission argues the plaintiffs had no property rights in the cement ramp and driveway which were in the right-of-way and used for more than 20 years as part of the filling station operation. The ordinance authorizes the licensing of such driveways. Prior to amendment of the ordinance Jacob Kuker had paid a "filling station" license fee to the town. Under the entire record we believe the jury could have found the plaintiffs had such permissive use which, until revoked by the town council, was of some value. The question was for the jury.

■ The commission next argues the court erred in excluding its offered evidence of resolutions entered into between Manning and the commission. Plaintiffs had no part in these resolutions. The commission attempted to prove they had an agreement with the town that the license or permissive use of part of the right-of-way would be revoked. The council had taken no such action. To permit such proof would allow the commission to arrange for reducing the value of plaintiffs' property and then condemn it at the lower value. The trial court properly permitted proof as to the nature and extent of plaintiffs' rights and use of the right-of-way and also properly excluded the other offered evidence. Plaintiffs had those rights until the town council revoked them. Our first opinion so establishes the law of this case.

At page 1136, 253 Iowa, page 293, 114 N.W.2d, we said:

"No hard-and-fast rule can be stated as to whether an abutting property owner has been denied reasonable access to his property, or, as we have said, 'free and convenient' access. Wegner v. Kelley, 182 Iowa 259, 165 N.W. 449; Iowa State Highway Commission v. Smith, 248 Iowa 869, 877, 82 N.W.2d 755, 760, 73 A. L. R.2d 680, and citations; Wilson v. Iowa State Highway Commission, 249 Iowa 994, 90 N.W.2d 161, and citations. Only after consideration of the vital facts can this be determined."

•See also Wicks v. Iowa State Highway Commission, 254 Iowa 998, 1002, 119 N.W.2d 781, 784.

Here the court properly submitted the question to the jury. We find no merit in the commission's contention it should have been decided as a matter of law.

On cross-examination of plaintiff, Mary Margaret Kuker, the commission, for impeachment purposes, attempted to offer in evidence her signed probate inventory report executed by her in 1957 as administratrix of her husband's estate listing the value of the property here involved as worth $25,000. Cross-examination also established new air condition equipment was installed in the cafe and new heating units put in the motel between 1957 and date of condemnation at a total cost of $4000. The trial court ruled the offered evidence was too remote. We believe it should have been admitted. Its weight and credit, of course, is for the jury.

The question of whether the original purchase price or cost is too remote is largely in the court's discretion. If it affords a fair criterion of present value it should be admitted. Hayes v. Chicago, Rock Island & Pacific Ry. Co., 239 Iowa 149, 154, 30 N.W.2d 743, 746; Hall v. West Des Moines, 245 Iowa 458, 468, 62 N.W.2d 734, 740; Nedrow v. Michigan-Wisconsin Pipe Line Co., 245 Iowa 763, 777, 61 N.W.2d 687, 693; 29 C. J. S., Eminent Domain, section 273, page 1267; 18 Am. Jur., Eminent Domain, section 351, page 994.

In Welton v. Iowa State Highway Commission, 211 Iowa 625, 634, 233 N.W. 876, 882, we said:

"The weight of judicial authority is to the effect that, if the owner testifies at the trial that his land was of greater value

than his return to the assessor indicates, the return can be used to contradict the testimony."

See also Duggan v. State, 214 Iowa 230, 234, 242 N.W. 98, 100; 29 C. J. S., Eminent Domain, section 273, page 1266.

From the entire record we find no abuse of discretion in granting the new trial.—Affirmed.

All JUSTICES concur.