R & R WELDING SUPPLY COMPANY, appellee, v. CITY OF DES MOINES, appellant.

No. 51344.

(Reported in 129 N.W.2d 666)

974

JULY 16, 1964.

Leonard C. Abels, Corporation Counsel, and Don Hise, Assistant City Attorney, both of Des Moines, for appellant.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for appellee.

SNELL, J.—This is an appeal from an interlocutory ruling of the Polk District Court wherein it was held as a matter of law that a lessee, in a condemnation proceeding brought by the City of Des Moines, could maintain an action for loss of lease-hold interest, even though the written lease contained a clause which provided that the lease would terminate if the entire leased premises were taken under power of eminent domain.

The lease in question was executed in 1956. The Urban Renewal Law (chapter 403 of the Code), under which the property was condemned, was not enacted until 1957.

The sole issue is the effect of the provision in the lease upon lessee's right to damages when the entire premises were taken by condemnation.

On November 12, 1956, plaintiff leased certain land in Des Moines, Iowa, from Jo-Ben Company upon which the lessor agreed to erect a building. By supplement to said lease, executed May 22, 1957, after the building had been erected, the term of the lease was determined to be from April 15, 1957 to April 30, 1967.

Pursuant to the lease the building was erected by the lessor, and the lessee, plaintiff herein, went into possession.

The lease was extensive in its provisions and covered many contingencies. Paragraph 34 provided:

"If the leased premises shall be wholly taken under eminent domain, then this lease shall terminate from the day the possession of the premises shall be required under the exercise of such power of eminent domain."

Not material here were provisions in event of a partial taking by condemnation.

In January 1962 the City of Des Moines instituted proceedings for condemnation of the property involved, together with other property in the area, for the Urban Renewal Project No. 1 "River Hills" in the City of Des Moines, Iowa. Notices were served and commissioners to assess damages appointed. The commissioners allowed no damages to plaintiff for the loss of its

leasehold interest. Plaintiff appealed to the district court. Plaintiff's original claim for damages for loss of good will and for loss or reduction in value of personal property was withdrawn. The sole question before the district court and before us is the right to damages for loss of leasehold interest.

At a pretrial conference the court, on its own motion, invoked rule 105, Rules of Civil Procedure, to determine the effect of paragraph 34 of the lease as it related to plaintiff's right to seek damages.

On December 27, 1963, the court entered an Order holding that the provision in the lease did not bar plaintiff's action. We granted permission for Interlocutory Appeal.

I. The right of eminent domain is a sovereign power. The right is limited to public uses or public purposes.

If the use is proper the right may be exercised by designated agencies acting under statutory authority. Stewart v. The Board of Supervisors of Polk County, 30 Iowa 9, 1 Am. Rep. 238; Reter v. Davenport, Rock Island and North Western Railway Co., 243 Iowa 1112, 1117, 54 N.W.2d 863, 35 A. L. R.2d 1306.

Private property shall not be taken for public use without just compensation being paid therefor. Article I, section 18, Constitution of Iowa. A leasehold interest is property and when taken in the exercise of eminent domain is entitled to compensation. Wicks v. Iowa State Highway Commission, 254 Iowa 998, 1007, 119 N.W.2d 781; Comstock v. Iowa State Highway Commission, 254 Iowa 1301, 1317, 121 N.W.2d 205.

It is agreed that plaintiff's leasehold interest was property and upon its taking for public use plaintiff was entitled to compensation unless barred by the terms of its lease.

II. For many years the state and various governmental subdivisions and agencies thereof, and certain designated corporations and individuals, have had the power of eminent domain. Chapter 471, Code of Iowa. This power of eminent domain is referred to as the right to take private property for public use. Section 471.19 provides that the grant in this chapter shall not be construed as limiting a like grant elsewhere in the Code for another and different use.

Section 368.37, Code of Iowa, provides that "Municipal corporations shall have power to * * * provide for the condemnation of, * * * any lands within or without the territorial limits of the corporation for such public purposes and as an incident to such other powers and duties conferred upon such corporations as make necessary or reasonable the acquisition of such land by said municipal corporations."

It should be noted that the specific uses included within the term "public purposes" are not listed.

■ The power of eminent domain may be exercised only where a public use is involved. Abolt v. City of Fort Madison, 252 Iowa 626, 633, 108 N.W.2d 263.

■ By the great weight of authority urban redevelopment laws have been upheld as within this limitation. Taking of property thereunder is a taking for "public use" or "public purpose." See annotation and authorities listed in 44 A. L. R.2d 1414 et seq.

III. The Fifty-seventh General Assembly by Act approved April 2, 1957, effective July 4, 1957, enacted what is known as the "Urban Renewal Law." In its present form this law now appears as chapter 403, 1962 Code of Iowa.

Section 403.7 provides:

"A municipality shall have the right to acquire by condemnation any interest in real property, * * *which it may deem necessary for or in connection with an urban renewal project under this chapter. A municipality may exercise the power of eminent domain * * *."

While not controlling in the issue before us it is interesting to note that before plaintiff moved into the building and before the date of the lease supplement fixing the term thereof, the urban renewal law had been passed by the General Assembly and approved by the Governor. As a general law the Act did not become effective until July 4th following, but comparable laws had been enacted in so many jurisdictions that such a program could hardly be called a surprise.

■ IV. Plaintiff does not challenge the city's right to condemn but argues that the statute designated a new public purpose

or public use neither contemplated by the parties nor included in the provisions of paragraph 34 of the lease.

The lease is not so limited. There is no attempt therein to limit the meaning of the term "eminent domain." The lease merely recognized that there is such a power and provided for termination of the lease if and when the power was exercised. The power of eminent domain may be exercised by various authorities and for many public purposes. New purposes for which the power may be exercised have from time to time been recognized.

The lease does not limit its self-destructive provisions to any agency, time or purpose. It merely provides that if the premises should be taken by eminent domain the lease shall terminate.

The parties by contract provided for the termination of the lease upon the happening of an event that could happen in many different ways. The event occurred. The lease came to an end.

V.   The effect of a condemnation clause in a lease was considered by the Supreme Court of the United States in United States v. Petty Motor Co., 327 U. S. 372, 375, 376, 66 S. Ct. 596, 598, 599, 90 L. Ed. 729. In that case the government condemned leased premises. The lessee sought compensation. The lease contained a self-destructive condemnation provision. The rights of the landlord had been satisfied as in the case before us. The court said:

"The lease * * * included a clause for its termination on the Federal Government's entry into possession of the leased property for public use. * * * If the Tool Company, with its termination on condemnation clause, was the only tenant and condemnation of all interests in the property was decreed, the landlord would take the entire compensation because the lessee would have no rights against the fund. There would appear to be no greater right where the landlord has been otherwise satisfied. Condemnation proceedings are in rem [citations] and compensation is made for the value of the rights which are taken. [Citation] The Tool Company had contracted away any rights that it might otherwise have had. We are dealing here with a clause for automatic termination of the lease on a taking of property for public use by governmental authority. With this type of clause, at

least in the absence of a contrary state rule, the tenant has no right which persists beyond the taking and can be entitled to nothing."

■ Even a mere licensee may have a compensable property right until the license is revoked. Kuker v. Iowa State Highway Commission, 256 Iowa 380, 386, 127 N.W.2d 566, 570. However, where a lease itself provides for termination there is no property right left for which to claim compensation.

In the case of In re Site for Library in City of Minneapolis, 254 Minn. 358, 359, 363, 95 N.W.2d 112, 114, 116, the Supreme Court of Minnesota had under consideration a condemnation clause wherein the tenant had agreed that if the demised premises were " 'taken for any street or other public use * * * then this lease and the term demised shall thereupon terminate.' "

In that case the provisions in the lease were not the same as in our case and the case did not involve a newly described public use, but the reasoning and conclusions of the court as to self-destructive leases are persuasive. The court said:

"We reach the conclusion arrived at by the trial court; namely, that the appellant-lessee has no compensable interest in the condemned premises under the terms of his present lease and that any right to compensation which another form of lease might have provided has been barred by the self-destructive terms of the condemnation clause therein contained and the exercise of the right of eminent domain by public authority."

VI. In Manrique v. Iowa State Highway Commission, 252 Iowa 553, 107 N.W.2d 432, plaintiff owned a building located on leased premises. The lease contained a 30-day termination provision. The highway commission acquired title to the real estate, served notice of termination of the lease and instituted condemnation proceedings. We held that under the clear and unambiguous terms of the written lease plaintiff had no compensable interest in the leasehold.

Compensation can only be allowed when there is a taking of a compensable interest.

Compensation cannot be allowed for something that does not exist. Under the terms of plaintiff's lease it never had any possessory rights or leasehold interest extending beyond the date of

condemnation. Plaintiff had previously so agreed by contract. In Lehman v. Iowa State Highway Commission, 251 Iowa 77, 84, 99 N.W.2d 404, we said: "Allowance of compensation for something not taken would amount to a gift which the State has neither the obligation nor the right to make." The same rule would apply to a city in a condemnation proceeding.

In the case before us the lease provision is plain, clear and unambiguous. There is no inconsistency, ambiguity or disagreement as to the terms of the lease contract between lessor and lessee.

In Pearson v. Howell, 184 Iowa 990, 169 N.W. 368, a lessee, relying on extension rights in his lease made valuable improvements prior to giving notice of his desire for extension. The lease provided for termination in event of sale. The building was sold. Our court held that in spite of the hardship imposed on the lessee the court is powerless to relieve against the plain, unambiguous provisions of the contract. Loc. cit. 995.

VII. In the case before us the intent of the parties is clearly expressed by their written contract and is determinable therefrom. They provided for termination of the leasehold interest upon condemnation.

Appellee argues with vigor, supported by citation of extensive authority, that in construing contracts surrounding circumstances may be considered. With this rule under appropriate circumstances we have no dispute, but we cannot extend it to the point of ignoring what the parties said in writing or to the point of repealing the parol-evidence rule. We do not have a question of construction. We do have a question of application of a precisely worded contract to undisputed facts.

At the time the lease was executed the Iowa Urban Renewal Law was not in effect. Plaintiff argues that the self-destructive provision for termination in the lease should be limited to the uses for which condemnation was at that time authorized. Plaintiff argues that condemnation for urban renewal could not have been contemplated or intended by the parties and that application of the lease provision should be accordingly limited. We do not agree. That is not what the lease says. The lease says that it is terminated if the premises should

be taken by eminent domain. The provision is broad and inclusive. It is not limited. When the parties used the words "eminent domain" they used a generic term meaning all takings for public use.

The trial court said: "By the term 'eminent domain' appearing in said Paragraph 34 is meant the superior right of sovereign power to appropriate property to a necessary public use. * * * Few terms used in legal parlance are better understood by the public than the term 'eminent domain,' and its meaning must have been known to the parties when they executed the lease."

In the instant case the taking was within the meaning of the term.

VIII. Defendant City argues that municipalities had the right of eminent domain for urban renewal purposes before the specific grant of authority in the Urban Renewal Law. We need not determine this question. The lease does not limit termination to condemnation for previously recognized purposes nor to agencies then having the right to condemn.

IX. The leased premises were taken by duly constituted authority acting under undisputed power of eminent domain. Thereafter plaintiff had no compensable interest in the leasehold. This issue having been determined as a matter of law nothing remains for trial.

The case is reversed and remanded to the district court for the entry of an order of dismissal.—Reversed and remanded.

All JUSTICES concur except HAYS, J., not sitting.