In the Matter of the ESTATE of Chris S. POULOS, Deceased.

Alexandra GIGILOS et al., Appellants,

v.

Peter STAVROPOULOS, Appellee.

No. 2–56350.

Supreme Court of Iowa.

May 21, 1975.

Francis J. Pruss, Cedar Rapids, for appellants.

Tom Riley, Simmons, Perrine, Albright & Ellwood, and John K. Von Lackum, Wadsworth, Elderkin, Pirnie & Von Lackum, Cedar Rapids, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, UHLENHOPP and McCORMICK, JJ.

McCORMICK, Justice.

This is an appeal by the contestants from an adverse jury verdict and judgment in a will contest. They contend the trial court erred in several rulings during trial and in instructing the jury. The principal question is whether the trial court erred in sustaining the proponent's hearsay objection to certain portions of decedent's hospital record. We affirm the trial court.

Chris S. Poulos, the decedent, was a Greek immigrant who settled in Cedar Rapids. He worked for a railroad, lived frugally, never married, and left an estate of

about $160,000. He died February 28, 1967, at the age of 72. There was evidence that he had been alienated from his relatives for many years.

Chris suffered a stroke on October 25, 1965, and was hospitalized. Prior to that time he had become acquainted with Peter Stavropoulos, the proponent, a young Greek who had recently immigrated to this country. Peter visited Chris frequently in the hospital and in a nursing home to which Chris was moved February 25, 1966.

On November 5, 1965, Chris established a voluntary conservatorship, naming Merchant's National Bank as conservator. The purported will at issue in this case was allegedly executed by Chris in the nursing home on March 5, 1966. It was drawn by attorney James L. Chipokas. Under it, Peter was the sole beneficiary of Chris's estate.

On February 10, 1967, Chris reentered the hospital, where he died a little more than two weeks later.

The purported will was admitted to probate March 7, 1967. The second publication of notice to creditors occurred March 17, 1967. The estate was closed December 8, 1967.

Contestants are Chris's heirs-at-law. They filed an action to set aside the will on February 13, 1968. The estate was reopened to permit the will contest to be heard and determined. The initial petition to set aside the will alleged two alternative grounds, undue influence and lack of testamentary capacity.

Several amendments to the petition were filed more than one year after the date of second publication of notice to creditors. One sought to add a third division to the petition, alleging the will was forged. On motion by the proponent that amendment was dismissed on the ground it showed on its face it was barred by the one-year period of limitation in § 633.309, The Code. Subsequently a new amendment was filed also seeking to add a third ground for setting aside the will, alleging the will was not

only forged but admitted to probate through fraud of the proponent and attorney Chipokas. The proponent moved to dismiss this amendment as also barred by the limitation statute. The motion was overruled.

Later, that division of the petition was amended to allege the purported fraud was the result of a conspiracy among the proponent, attorney Chipokas, and the attorney's brother Constantine. The last paragraph of this amendment alleged the will was not prepared for Chris and was not executed by him. The proponent also moved to dismiss this amendment, and the motion was overruled.

The proponent alleged the period of limitations as a defense in his answer. At the conclusion of all the evidence, he moved for a directed verdict as to Division III, relying in part on that ground. The motion was overruled.

The court submitted the case to the jury on three of the bases of contest, undue influence, lack of testamentary capacity, and forgery. By special verdicts, the jury found contestants failed to establish any of those grounds. Judgment was later entered dismissing their petition, and this appeal followed.

I. Contestants' first two assignments of error relate to rulings by the trial court and instructions to the jury concerning issues in the third division of their petition. In addition to contending the court's rulings and instructions were correct, the proponent contends the trial court should not have submitted issues in the third division of the petition to the jury. The proponent asserts the court erred in overruling his motions to dismiss the amendments which added that division to the petition and his motion for directed verdict on that division, so that any error relating to issues in that division is moot.

 Contestants contend the proponent cannot assert error in the trial court's rulings on his motions because he did not

cross-appeal. However, it is well established that a successful party without appealing or assigning errors may show on the face of the record he is entitled to prevail on an issue on appeal because of error committed against him, even though error was also committed against the appellant. Ross v. McNeal, 171 N.W.2d 515, 516 (Iowa 1969); In re Condemnation of Certain Land, 256 Iowa 380, 385, 127 N.W.2d 566, 569 (1964); Kroblin Refrigerated X Press, Inc. v. Ledvina, 256 Iowa 229, 233, 127 N.W.2d 133, 136 (1964); Thompson v. Butler, 223 Iowa 1085, 1092, 274 N.W. 110, 113 (1937). It is essential that the alleged error against the appellee be preserved in the trial court. In this case it was.

Section 633.309, The Code provides:

"An action to contest or set aside the probate of a will must be commenced in the court in which the will was admitted to probate within one year from the date of second publication of notice of admission of such will to probate and not thereafter."

See Ritter v. Dagel, 261 Iowa 870, 156 N.W.2d 318 (1968).

■ It is well established that the bar of a period of limitations is applicable to an amendment to a petition filed after expiration of the period if the amendment sets forth a new and distinct cause of action on a wholly different theory. Swartz v. Bly, 183 N.W.2d 733, 737 (Iowa 1971), and citations. The amendments adding Division III in this case were of that kind. We dealt with the same allegations in Gigolos v. Stavropoulos, 204 N.W.2d 619 (Iowa 1973), an attempted collateral attack on the same will as is involved in this case. We identified the allegations as available only in a contest of the will. They are separate and distinct from the claims of undue influence and lack of testamentary capacity and present a wholly different theory. The bar of the statute of limitations was applicable, and contestants did not establish any basis for avoiding it.

Whatever the correctness of the trial court's rulings at the pleading stage, the court erred in overruling proponent's motion at the conclusion of the evidence for a directed verdict on Division III of the petition. This makes it unnecessary to decide whether the court committed any error against contestants regarding that division of the petition.

II. Contestants also contend the trial court erred in permitting the proponent to cross-examine attorney Chipokas regarding the preparation and alleged execution of the will. The contestants had called Chipokas as a witness. Counsel for contestants did ask him about preparation of the will and the groundwork he laid for its execution, but not about the execution itself. The record shows the proponent did, over timely objection, inquire into preparation and execution of the will.

■ We accord considerable discretion to a trial judge to determine the scope and extent of cross-examination. In re Estate of Cory, 169 N.W.2d 837, 843–844 (Iowa 1969); Oakes v. Peter Pan Bakers, Inc., 258 Iowa 447, 453, 138 N.W.2d 93, 97 (1965). A witness may be cross-examined on subjects directly and indirectly brought out on direct examination. This includes the right to rebut inferences and deductions sought to be established on direct examination. Uhlenhopp v. Steege, 233 Iowa 368, 372, 7 N.W.2d 195, 197 (1943); see, generally, McCormick on Evidence, § 21 at 47–48, §§ 24, 25 (Second Ed. 1972). The trial court did not abuse its discretion in fixing the bounds of cross-examination in this case.

Contestants argue the court's rulings prevented them from impeaching Chipokas regarding new matters brought out on cross-examination since he was their witness. The record shows, however, that the trial judge corrected his ruling denying them the right to impeach Chipokas on redirect examination, and they were permitted to do so.

This assignment of error is without merit.

III. In their remaining assignment contestants allege that the trial court erred in sustaining the proponent's objections to certain portions of the hospital records of decedent.

One exhibit related to the first hospitalization. The other concerned the second hospitalization. The will was allegedly executed during the first hospitalization. The second hospitalization occurred almost a year after that date.

When the record of the second hospitalization was offered, counsel for the proponent objected, in part alleging the exhibit was irrelevant and remote. The court asked counsel for contestants for his theory of relevancy. Counsel responded, "Well, actually, I'd have to inspect it, I suppose, to see what materiality it has." The court then sustained the objection with leave allowed to counsel for the contestants to show its relevancy and reoffer it. The exhibit was not reoffered.

Relevancy is determined by the sound discretion of the trial court. While remoteness in point of time does not necessarily make evidence irrelevant, it may do so where the elapsed time is great enough to negative any logical connection between the evidence and the fact sought to be established by it. The basic test of relevancy is whether the evidence offered would make the desired inference more probable than it would be without the evidence. State v. Engeman, 217 N.W.2d 638, 639 (Iowa 1974).

When evidence which is apparently inadmissible may be admissible for a limited purpose, the party offering it has the duty to alert the trial court to his theory of admissibility. State v. Arnold, 225 N.W.2d 120, 122 (Iowa 1975); Lemke v. Mueller, 166 N.W.2d 860, 871 (Iowa 1969).

In this case the trial court did not abuse its discretion in determining the record of the second hospitalization was ir-relevant. Counsel for defendant did not suggest any theory of limited admissibility. The trial court did not err in sustaining proponent's objection to the admissibility of that hospital record.

The record of the first hospitalization was received in evidence, but upon specific objection by the proponent five statements were deleted from the exhibit. Those statements were objected to as hearsay, alleged to be inadmissible because not made in relation to the care and treatment of the patient.

The relevant physician's progress notes, with deletions shown in italics, are as follows:

2-6-66 Chris is depressed—not doing very well—mouth is quite dry. *He states he is being bothered by one of his young visitors.* Visiting time to be limited to five minutes in afternoon & evenings. Urine is negative. His attorney was informed of the above.

2-14-66 Depressed—states, "I'm not going to make it." An attempt was made to discourage this type of thought. The efforts of the nurses have been directed toward this goal of making him a bit happier.

*The charge nurse, Mrs. Ebel, reported that Chris was quite upset—to the point of crying—following his visit by the young man who has suddenly become a "close friend" (see progress note of 2-6-66). If this continues he will not be allowed to visit Chris.*

2-21-66 Urine neg.—no new findings. *States that his young friend wishes to have him to his home or to a friend's home. This is OK w. me if his medical care can be continued.*

2-22-66 No change—urine neg. for sugar. *States he has not signed a will as indicated by another lawyer. States too that he has not known young Peter (? last name) very long—just since his illness.*

From the nurses' observation sheet, the following entry is relevant, with deletion shown in italics:

| 2-8-66 | Refuses to walk and wheel chair ride. L. Howe, R.N. *Chris states 'he'll (Peter) kill me if I go home.'* L. Meineke, N.T. |
|---|---|

In urging the admissibility of the deleted portions of the progress notes and nurses' observations, counsel for contestants asserted the statements were admissible because germane to care and treatment of depression.

The physician's notes were made by Percy G. Harris, Chris's treating physician. The nurses' observation at issue was made by Linda Meineke, a nurse technician. Both persons testified at trial.

Dr. Harris verified that Chris was depressed following his stroke. He examined the progress notes. With his recollection refreshed, he testified in detail about the matters deleted in the progress notes. He repeated Chris's alleged statements. He testified fully about the upsetting effect of the proponent's visits and limitations on them. No material variance exists between the doctor's testimony and the progress notes. If anything, his testimony was more favorable to contestants than the deleted portions of the progress notes.

Witness Meineke could not remember making the entry in the nurses' observations of February 8, 1966, nor could she recall any incident upon which it might have been based.

We have long held that medical and hospital records are admissible, upon proper foundation, as an exception to the hearsay rule. See Gearhart v. Des Moines Ry. Co., 237 Iowa 213, 219, 21 N.W.2d 569, 572 (1946); see also Ipsen v. Ruess, 239 Iowa 1376, 35 N.W.2d 82 (1948). We have recognized, however, that this does not necessarily make everything in the records admissible. In Poweshiek County National Bank v. Nationwide Mutual Insurance Company, 261 Iowa 844, 851, 156 N.W.2d 671, 675 (1968), we held hearsay statements in medical and hospital records which are not germane to physical condition or medical treatment are inadmissible unless nonprejudicial.

■ This is referred to by commentators as the "double hearsay" rule. The hospital record is hearsay. It is admissible under an exception to the hearsay rule. But it may include recitals of statements of others, including the patient. This included hearsay is the subject of the "double hearsay" rule. Included hearsay is inadmissible, upon proper objection, unless it independently comes within a recognized exception to the hearsay rule. McCormick on Evidence, supra, § 313 at 731.

■ A statement of the rule is found in 2 Jones on Evidence, § 12:12 at 362 (Sixth Ed. 1972):

> "Recitals in hospital records may not be admitted to show the facts or circumstances of an accident as recited by the patient for inclusion in the record, or facts of case history recited by the patient for inclusion in the records, to prove the truth of the facts stated, unless they qualify under some other exception to the hearsay rule, such as declarations against interest, spontaneous statements, or, as most common, statements made to the physician for diagnosis and treatment. In such cases they may not be excluded as they fall within the rule of admissible included hearsay."

Admissibility under exceptions has not been limited to reports of statements by the patient. Reports of statements by other persons are also admissible if they come within exceptions to the hearsay rule. See Mayor v. Dowsett, 240 Or. 196, 400 P.2d 234 (1965), and citations; McCormick on Evidence, supra.

■ Under this rule, we believe the trial court should not have sustained the objection to the deleted portions of the February 6, 14, and 21 physician's notes. The statements shown in those notes were clearly made to the physician in relation to Chris's care and treatment. The February 22 statement did not relate to care and treatment and was not shown to come within any other exception to the hearsay rule.

Regarding the purported statement of Chris recorded in the nurses' observations of February 8, we believe the trial court was well within its discretion in finding an insufficient showing that it was a statement made to the nurse relating to his medical care and treatment.

■ Although we believe the trial court erred in excluding portions of the February 6, 14, and 21 physician's progress notes, we find the record affirmatively establishes that the presumption of prejudice from this error was overcome. The matters deleted were fully covered in the testimony of the doctor. Under these circumstances the error was not prejudicial. See State v. Mattingly, 220 N.W.2d 865, 869 (Iowa 1974).

We find no reversible error.

Affirmed.