MISSOURI TOWNSHIP in Chariton County, Suing by Its Township Board, HENRY J. WEBER, Trustee, and R. W. GOLL and GUSS NOLL, Members, Appellant, v. FARMERS BANK OF FOREST GREEN. —42 S. W. (2d) 353.

Division Two, October 1, 1931.

*Collet & Son* for appellant.

870

*Lamb & Lamb* for respondent.

WESTHUES, C.—Plaintiffs, on January 8, 1927, filed their petition in the Circuit Court of Chariton County, Missouri. An amended petition was filed April 19, 1927. The petition contains five counts. They are similar in character, with the exception of the amounts. We have selected count four of the amended petition as an illustration. It is as follows:

"For fourth cause of action plaintiff says that Chariton County, Missouri, heretofore on the —— day of ———, by an election duly called for that purpose, legally adopted the provisions of what is known as the Township Organization Law, and that on all the dates mentioned in this petition said county was operating under and governed by the provisions of said law; that Missouri Township is and on all the dates mentioned in this petition was one of the municipal townships of said Chariton County; that on all the dates mentioned in this petition one J. E. Colson was the regularly elected and qualified trustee of the said Missouri Township, and as such trustee had charge and custody of all the moneys belonging to said

township; that Henry J. Weber is the duly elected and qualified trustee and R. W. Goll and Guss Noll are the duly elected and qualified members of the township board of said Missouri Township and that the said Henry J. Weber, R. W. Goll and Guss Noll constitute the Township Board of said Missouri Township and as such prosecute this suit on behalf of said Missouri Township; that the Farmers Bank of Forest Green, Missouri, defendant herein, is a banking corporation and institution duly incorporated under the laws of the State of Missouri for the purpose of engaging in a general banking business, and as such was so engaged on all the dates mentioned in this petition.

"That on and prior to January 20, 1925, the said J. E. Colson had on deposit in the defendant bank as trustee of this said Missouri Township, a large sum of money belonging to the said Missouri Township; that said money so deposited with defendant bank was the sole property of the said Missouri Township, and that he, the said J. E. Colson, had no right or authority to pay out or expend any of said moneys except in payment of warrants duly drawn by the Township Board of Missouri Township in payment of debts and obligations owing by said township, all of which facts were well known to this defendant; that on the 20th day of January, 1925, the said J. E. Colson unlawfully drew his check upon the fund of moneys deposited and on deposit in defendant bank, which was a trust fund belonging to said Missouri Township, in favor of this defendant, and the defendant, well knowing that said check was not in payment of any warrant issued or drawn by the Township Board of Missouri Township, and not in payment of any debt or obligation owing by said township, accepted and received said check and drew out of said trust fund the sum of $504.88, which said $504.88 this defendant unlawfully appropriated to its own use.

"Wherefore plaintiff prays judgment against defendant on the fourth count of its petition in the sum of $504.88, together with six per cent interest thereon from the 20th day of January, 1925, to the date of judgment, and for the costs of this suit."

Defendant, in due time, filed its answer. By an agreement of the parties a jury was waived and the cause was tried before the court, sitting as a jury. Judgment was entered for defendant on the first and second counts of the petition, on the theory that they were barred by the Statute of Limitations (Sec. 862, R. S. 1929). Judgment was entered for plaintiff on the third count for $2.05, on the fourth count for $5.61, and on the fifth count for $1.10. From this judgment plaintiffs appeal.

The facts relied upon by plaintiffs for a recovery, as revealed by the testimony, are as follows:

J. E. Colson was the trustee of Missouri Township, and as such had the care and custody of the funds; which funds were deposited by Colson in the defendant bank. They were expended by orders of the Township Board in payment of its debts. The practice followed was: The Township Board, after allowing claims, would make an order directing the secretary to draw a warrant in favor of the creditor. This warrant was presented to Colson, the trustee, who would then draw a check on defendant bank in payment of the warrant.

Colson embezzled a portion of the funds of the township. When the funds reached a low ebb, Colson borrowed money from the defendant bank by giving his personal note and a chattel mortgage on his property. Colson directed the bank to deposit or credit the township with the amount borrowed. When tax paying time arrived the collector of the county would pay to the trustee, Colson, the funds collected belonging to the township. Colson would then immediately draw a check on the funds of the township, in favor of the defendant bank, in payment of the amount borrowed on his note, with interest. No order of the Township Board was made to issue a warrant, nor was a warrant issued, in payment of any of the notes made by Colson to the bank. The defendant bank did not present its claim to the Township Board.

Defendant's testimony tended to show that Colson, at the time he borrowed the funds from the bank, represented to the bank that the township funds were low, due to lawful expenditures; claiming the school districts had overdrawn their accounts. That the township desired the loans for the purpose of enabling it to pay its current bills. The loans to be repaid when the collector of the county would pay over to the trustee the taxes and revenue collected for that year. The defendant bank denied any knowledge of the embezzlements.

The trial court, when rendering judgment, orally made a finding of facts, which are incorporated in the bill of exceptions and made a part thereof. This finding discloses the theory upon which the court rendered judgment. It is in part as follows:

"Now, on the question of whether or not this was or became Colson's money: Technically it may have been his money when he borrowed it from the bank, but whatever may be the technical, legal situation, as a matter of fact, what this bank did was simply to advance the various sums of money involved here, direct to the township; the money was not paid over to Colson, it was not even deposited in a personal account of Colson's; it was deposited in the bank direct, passed direct from the bank into Colson's account as trustee, virtually and practically direct loan by the bank to the township. Of course Colson had no authority to borrow money for the township, the bank knew that, and for that reason I think cannot

recover the interest or take the interest out, but as to the money itself it seems to me that in equity and good conscience when that money was placed by the bank into the township account it was entitled to be reimbursed out of the account, regardless of whether Colson was short in his accounts or not.  On that question of whether Colson was short in his accounts and the bank knew it, the evidence was very meager—I mean as to the bank's knowledge.  Mr. Colson testified that in the beginning he did not inform the bank anything about being short.  I think he said some time later, perhaps before the last transaction or two, he told the cashier something about it, or intimated to him, but his testimony is not very satisfactory about that, and the cashier's testimony was that he was not so informed and never was so informed, and the issue of fact on that proposition under the evidence is found for the defendant.  In my opinion, the bank was loaning that money without knowledge that Colson was short, if he was short, but on the assumption that the money was being borrowed by the trustee until tax money should come in and then it would be immediately repaid, and that was the course pursued, as money came in these loans would be repaid whether due or not, and regardless of the technical legal question as to whether that money became Colson's when he borrowed it.  The fact, in my judgment is that when it went direct to Colson's account as trustee, and without knowledge on the part of the bank that Colson was short, without any suspicion on their part that he was borrowing this money to make up a shortage already existing, but rather with the assumption on their part that it was to meet temporary needs of the township until money came in, which it did do shortly; and while this action for money had and received is a legal action, still it involves equitable principles, and I do not think the plaintiff is entitled to recover for the full sum unless he can show he was fairly and equitably entitled to the money.  The finding will be for plaintiff on those counts for interest only.''

The defendant pleaded the Statute of Limitations as a defense to counts one and two of the petition.  The action was filed on the 8th day of January, 1927.  The basis of recovery on the first count of the petition is a check drawn by J. E. Colson, on the 26th day of May, 1921, in favor of the defendant bank. The check in the second count, was dated January 7, 1922.  The evidence discloses that the check was paid on that date and the transaction completed.  The court sustained the defendant's contention, that the action was barred by Section 1317, Revised Statutes 1919 (now Sec. 862, R. S. 1929), often referred to as the five-year Statute of Limitations.  There is nothing in this case, as disclosed by the record, of any acts on the part of the bank that would toll the Statute of Limitations as to the defendant bank.  The judg-

ment of the lower court, in favor of the defendant must, therefore, be affirmed as to counts one and two of the petition. [Brown v. Irving-Pitt Mfg. Co., 292 S. W. 1023.]

The finding of facts made by the trial court, as above quoted, is supported by the greater weight of the evidence. It is binding on this court in a like manner as a verdict of the jury.

The only question for our determination is, whether the trial court erred, in view of the facts found, in rendering judgment for plaintiff for the amount of the interest only, on counts three, four and five of the petition.

In determining this question we must keep in mind that the defendant bank was charged with the knowledge that Colson, the township trustee, did not have the power or authority to borrow money on behalf of the township. The defendant is also charged with notice of the provisions of Sections 12291, 12301, and 12306, Revised Statutes 1929.

Section 12291 provides that the trustee shall not pay out any money belonging to the township for any purpose whatever, except upon the order of the township board of directors, signed by the chairman of said board, and attested by the township clerk.

Section 12301 reads as follows: "Any person having a claim or account against the township may file such claim or account in the office of the township clerk to be kept by the said clerk, and laid before the township board at their next meeting: *Provided, however,* that any person having a claim against the township may present said claim to the township board himself, or by an agent, at any legally convened meeting of said board; said board shall have the power to determine the legality or illegality of any claim or account against the township, and to reject said claim, or any part thereof, as to them appears just and proper; but in no case shall the township board be authorized to allow any claim, or any part thereof, until the claimant makes out a statement, verified by affidavit to the amount and nature of his claim, setting forth that the same is correct and unpaid, or, if any part thereof has been paid, setting forth how much."

Section 12306 reads as follows: "When any claim or account, or any part thereof, shall be allowed by the township board of directors, they shall draw an order upon the township trustee in favor of the claimant for the amount so allowed—said order to be signed by the president of said board, and attested by the township clerk and delivered to said claimant."

These statutes were enacted by the Legislature for a purpose, that is, to safeguard the funds of the public, to establish a regular procedure and prescribe an orderly manner in which the public funds

may be expended. The bank in this case was a party to the ostensible, unauthorized act of the trustee in borrowing money for the township. The bank did not comply with Section 12301, above quoted, in presenting its claim to the township board. It ignored the statute and accepted a check from the trustee, in payment of a claim that had not been approved by the township board. Defendant was charged with knowledge that the trustee violated Section 12291, above referred to, in drawing the checks in payment of the bank's alleged claims without an order of the township board. Had the defendant bank followed the law it would not have made the loans in behalf of the township to Colson. Again, had the bank complied with Section 12301, supra, and presented its claim to the township board, Colson's embezzlements would have been discovered at once.

We do not attribute anything to the defendant bank but an altruistic motive in dealing with Colson. We agree with the trial court that the equities are on the side of the defendant bank. Are these equities sufficient in this case to authorize this court to affirm the judgment, thereby putting its stamp of approval upon a practice of dealing with public funds, as disclosed by the evidence? We think not. It would be against public policy to condone such conduct; it would open the door to fraud. The acts of the bank in this case were at least part of the means used by the trustee to keep secret his embezzlement. While the bank was led to and did believe that the money was being advanced for the benefit of the township, this was not a fact. Colson, borrowed the money for himself, that he might replace, at least enough of what he had embezzled, to pay the current bills of the township; thereby avoiding a discovery of his wrongdoing. He gave his personal note, secured by a chattel mortgage on his personal property, for each of the loans made. They were Colson's notes, the money obtained was his, not the township's. The township did not authorize the borrowing of the funds, it did not desire or need additional funds. The township was not benefited by these loans.

Under the circumstances the equities of the bank are not entirely perfect. While acting in good faith, defendant was charged with notice of the provisions of the statutes above quoted. Then too, the fact that Colson gave his personal notes, secured by chattel mortgages on his property for pretended loans in behalf of the township, should have been viewed with suspicion. But aside from that, an inquiry by the bank, of those who were authorized by law to transact the business of the township, would have led to a discovery of the fraud practiced by Colson.

The only case cited in the briefs, by appellant and respondent, in point on the facts presented, is Hartford v. American National Bank, 49 Conn. 539. This case is cited in appellant's reply brief.

It was not cited or presented to the trial court. The facts and circumstances in that case are similar to those in the case at hand. The issues were found for the plaintiff. While we are not bound to follow the decisions of a sister state, they are persuasive, if based on sound principles and good reason. Public policy demands that the statutes enacted by the Legislature, for the protection of public funds, be heeded. The courts should announce rules of law that require a compliance with, and not permit an invasion of, the plain intent and purpose of the statutes. Had defendant heeded the law applicable, in dealing with the township authorities, it would not have found itself in the present unfortunate circumstances.

We have reached the conclusion that the trial court erred in rendering judgment for plaintiff, for the amount of interest only. However, the record does not contain any substantial evidence of the amount of shortage existing at the time Colson was relieved of his duties as trustee. Colson testified that he had been led to believe that the amount of the checks in controversy in this case represented the total shortage. This is uncertain. Plaintiffs should not have a judgment in any event against the bank for a sum in excess of the shortage. If Colson, out of his personal funds, made good any part of the embezzlement, it should inure to defendant's benefit. [39 Cyc. 551.] The defendant should be permitted, if it be a fact, to show any payments by Colson, that would reduce the shortage below the sum asked for in counts three, four and five of the petition.

As to counts three, four and five of the petition, the judgment of the circuit court is reversed and remanded. As to counts one and two of the petition, the judgment is affirmed. *Cooley, C.*, not sitting; *Fitzsimmons, C.*, concurs.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All of the judges concur.