LOUISE K. WAESCHE ET AL. *v.* THE REDEVELOPMENT AGENCY OF THE CITY OF NEW LONDON

KING, C. J., ALCORN, HOUSE, COTTER and RYAN, JS.

Argued April 7—decided April 26, 1967

*Frank A. Francis,* for the appellant (Singer Sewing Machine Company).

*John C. Dennis,* with whom, on the brief, was *J. Rodney Smith,* for the appellees (plaintiffs).

*C. Robert Satti,* appeared for the named defendant.

KING, C. J.   The Singer Sewing Machine Company, hereinafter referred to as Singer, had conducted a salesroom and service center for its sewing machines in a portion of a building owned by the plaintiffs on Main Street, in New London.  The defendant redevelopment agency of the city of New London took the building by condemnation.  The date of taking, under § 8-129 of the General Statutes (Rev. to 1966), was March 19, 1965, since on that date the certificate of taking was recorded.  A con-

demnation award of $50,000 was finally entered for the property taken, to be paid to the persons entitled thereto. See cases such as *Research Associates, Inc. v. New Haven Redevelopment Agency,* 152 Conn. 137, 139, 204 A.2d 833. The referee found that the $50,000 figure was a reasonable amount.

Singer claimed to be entitled to part of the award and, pursuant to General Statutes § 8-132a, made a motion in the Superior Court for a determination of its equities, as lessee, in the award. The court, in turn, referred the matter to a state referee, who made a finding of facts and drew alternative conclusions as to the applicable law relative to Singer's equities. In effect, the referee found that, if Singer's lease automatically terminated on the date of the taking, Singer was entitled to no part of the award as compensation for its leasehold interest; and that, if the lease did not then automatically terminate, Singer was entitled to $4000 for the value of its leasehold interest. Singer excepted to both alternative provisions of the award. Singer sought no correction of the subordinate facts of the finding, nor does it clearly appear that Singer made any claims of law before the referee.

Singer originally took possession of the premises under a lease dated April 25, 1950, for a term of five years beginning August 1, 1950. During its occupancy under that lease and under a modification thereof dated July 19, 1950, Singer installed a new store front and made other improvements and changes, adapting the property to Singer's use as a salesroom and service center. The original cost to Singer of these improvements was $14,587.

Under date of January 17, 1955, Singer entered into a new lease, which provided that "[t]his lease cancels and terminates, as of the . . . beginning of

the term hereof . . . [August 1, 1955, a prior] lease dated April 25, 1950, together with the right of renewal thereof". The 1955 lease ran for a term of five years from August 1, 1955, through July 31, 1960, and contained a new and higher rental, different renewal provisions, and a small increase in the area of the building leased to Singer. Since one of the three owners and lessors in 1950 died prior to 1955, the lessors of the 1955 lease consisted of but two of the 1950 lessors and six other persons who had succeeded to the interest of the deceased 1950 lessor.

There thus can be no question that on August 1, 1955, the lease entered into in April, 1950, as modified in July, 1950, had expired and was no longer of any effect, and that none of the parties had any rights or obligations under it.

Singer exercised a right of renewal of the 1955 lease for a further term of five years ending July 31, 1965, and it occupied the demised premises until after the taking on March 19, 1965.

In its brief, Singer indicates that it makes two main claims in this appeal. The first is that it is entitled to receive the actual cost to it of the improvements it had made to the property prior to the term of the 1955 lease. The second is that, even if its first claim is rejected, it is at least entitled to recover the $4000 for the destruction of its leasehold interest. For convenience we shall consider the two claims in inverse order.

## I

The 1955 lease contained, in paragraph 7, a provision, which is crucial to the decision of both of Singer's claims in this appeal, that "[i]n the event the demised premises or any part thereof shall be

condemned for public use, then . . . in that event, upon the taking of the same for such public use, this lease shall terminate and end, anything herein contained to the contrary notwithstanding, except however that Tenant may prove and collect from the condemning authorities the value of any fixtures, alterations, changes, improvements, redecorations and repairs installed in or made to the premises by Tenant at its expense".

Our rule as to the proper method of evaluating a leasehold interest in property which is taken in its entirety in eminent domain has been recently stated in *Canterbury Realty Co.* v. *Ives,* 153 Conn. 377, 382, 216 A.2d 426. It is but a specific application of the general rule that the constitutional requirement that a condemnee receive just compensation "means a fair equivalent in money for the property taken . . . as nearly as its nature will permit. Ordinarily, although not necessarily, this is the market value of the property taken. But the question of what is just compensation is an equitable one rather than a strictly legal or technical one. The paramount law intends that the condemnee shall be put in as good condition pecuniarily by just compensation as he would have been in had the property not been taken". *Colaluca* v. *Ives,* 150 Conn. 521, 530, 191 A.2d 340. But for the provisions of the foregoing termination clause, the general rule would have applied in the present case.

The court correctly held that "[b]y its own terms the lease . . . terminated when the property was condemned for public use, and Singer's right to share in the condemnation award is limited to any ascertainable enhancement of the value of the property by reason of any specific improvements contemplated in the lease provision". In other words,

there was here what is commonly termed an automatic termination provision, the effect of which was to terminate the lease at the time of taking, which in this case was March 19, 1965.

Such a provision is not uncommon, and its validity has been generally upheld. Its effect is automatically to terminate the leasehold interest as of the date of taking and thus to destroy any right which the tenant would have, but for the automatic termination clause, to compensation for the destruction of the unexpired portion of its leasehold. This determination disposes, adversely to Singer, of its claim for compensation for the destruction of its leasehold interest prior to its stated termination date of July 31, 1965, and for any value represented in its right of renewal. *United States* v. *Petty Motor Co.,* 327 U.S. 372, 375, 66 S. Ct. 596, 90 L. Ed. 729; 27 Am. Jur. 2d 22, Eminent Domain, § 250; note, 96 A.L.R.2d 1140, 1143, 1145 § 4, 1146 § 5 [a]; 11 McQuillin, Municipal Corporations (3d Ed. Rev. 1964) § 32.85, p. 464; 2 Nichols, Eminent Domain (3d Ed. Rev. 1963) § 5.23 [2]. Indeed this rule in effect was followed and applied by our Superior Court in *Jones* v. *New Haven Redevelopment Agency,* 21 Conn. Sup. 140, 141, 146 A.2d 921, and *M. & S. Lesser Investment Co.* v. *New Haven Redevelopment Agency,* 21 Conn. Sup. 404, 406, 156 A.2d 200.

It seems clear that the alternative award of $4000 found by the referee covered the value of Singer's leasehold interest and right of renewal, if in fact the lease did not automatically terminate on the date of taking. Since, as pointed out, it did so terminate, there is no theory under which Singer is entitled to the $4000 alternative award for damages for the destruction of its leasehold interest.

## II

We turn now to the basic claim of Singer which seems to be that it is entitled to receive from the condemnation award the cost to it of the improvements it made to the building prior to the 1955 lease.

It is possible, of course, to include in an automatic termination agreement, a clause containing provisions as to the rights of the lessor and the lessee in the condemnation award, and such provisions are valid and enforceable according to their terms. 27 Am. Jur. 2d 22, Eminent Domain, § 250; note, 96 A.L.R.2d 1140, 1145 § 4; 11 McQuillin, op. cit. § 32.85, p. 465. The previously quoted provision as to Singer's right to prove and collect from the condemning authorities the value of any improvements made to the premises at Singer's expense did constitute such a clause. But Singer's rights, if any, under that clause, depend upon its proper interpretation. Note, 96 A.L.R.2d 1140, 1168 § 15 [a].

Singer seems to claim that under this provision it should receive, from the condemnation award, the original cost to it of the new store front and other improvements previously referred to.

It is clear that the quoted provision on which Singer bases its claim provides for the recovery of the "value" of the improvements. It does not provide for the recovery of their first cost. This is true regardless of the fact that the clause applies only to improvements made at Singer's expense, since obviously it would be wholly unreasonable to assume that the parties would give Singer any right to recover for improvements not made at its expense.

Furthermore, it would be wholly unreasonable to assume that the parties contemplated that Singer

could recover, from the proceeds of a condemnation award, the actual cost of an improvement to a building which was made ten to fifteen years before the date of taking, since the condemnation award itself is based on the market value of the property, as a whole, at the time of taking. *United States* v. *Petty Motor Co.,* 327 U.S. 372, 377, 66 S. Ct. 596, 90 L. Ed. 729; *United States* v. *City of New York,* 165 F.2d 526, 530 (2d Cir.); *Canterbury Realty Co.* v. *Ives,* 153 Conn. 377, 382, 216 A.2d 426. Any share of the award to which Singer would be entitled obviously could be reasonably based only on the value, at the time of the taking, of its improvements. Moreover, an improvement to a building may be assumed, at least in the absence of clear evidence to the contrary and there is nothing of that kind in this record, to be likely to depreciate in value through the years in about the same way as would the building itself. To construe the word "value" in the provision in question as meaning "first cost" would not only do violence to the language used but would lead to a patently absurd and inequitable result. See *Colaluca* v. *Ives,* 150 Conn. 521, 530, 191 A.2d 340.

The referee's finding of subordinate facts was unattacked. It contains no facts supporting a conclusion, nor any conclusion, as to the value of Singer's improvements at the date of taking on March 19, 1965. This precludes recovery by Singer of anything for its improvements.

### III

It is clear that Singer has failed to show itself entitled to any part of the award either for the destruction of its leasehold interest or for the value of any improvements it claimed to have made.

It is unnecessary to consider the plaintiffs' other claims as to Singer's lack of right to share in the award.

There is no error.

In this opinion the other judges concurred.