Argued and submitted January 19, reversed and remanded with
instructions September 8, respondent's reconsideration denied October 20,
appellant's reconsideration of denial of attorney fees denied
November 19, petitions for review denied December 22, 1981 (292 Or 334)

## URBAN RENEWAL AGENCY
## OF THE CITY OF SALEM,
*Respondent,*

*v.*

## WIEDER'S INC. et al,
*Respondents,*
## ACTION UNIFORM, INC.,
*Appellant.*

(No. 107426, CA 17351)

632 P2d 1334

Donald Joe Willis, Portland, argued the cause for appellant. With him on the briefs were Elizabeth K. Reeve and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

David J. De Martino, Assistant City Attorney, Salem, argued the cause for respondent Urban Renewal Agency of the City of Salem. With him on the brief was William J. Juza, City Attorney, Salem.

David A. Rhoten, Salem, argued the cause for respondents Wieder's, Inc., and Margaret Wieder. With him on the brief were George A. Rhoten and Rhoten, Rhoten and Speerstra, Salem.

No appearance for respondent United States National Bank of Oregon.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

This is an appeal by defendant Action Uniform (the lessee) from a judgment in an eminent domain proceeding, assigning as error the trial court's granting of defendant Wieder's (the lessor) motion *in limine* to exclude proof by the lessee of the value of its leasehold. The motion was based on a clause in the written lease agreement, which the trial court interpreted as foreclosing the right of the lessee to share in the lump sum awarded the lessor for condemnation of the leased premises.

The comprehensive urban renewal project of which this taking is part was first approved in 1971. In 1973, the lessee purchased the trade fixtures and site improvements of the lessor's laundry business and signed a lease agreement covering the building and lots on which it was situated. The lease was for a period of ten years, with an option to renew for five additional years. The complaint in this case was filed in 1978. In 1979, plaintiff settled with the lessee and compensated it for the taking of its trade fixtures and equipment. The lessee then sought to participate in the award to be made to the lessor for taking the property itself, contending that it was entitled to compensation for the taking of its leasehold interest.

The lessor filed a motion *in limine* to exclude proof of the value of the leasehold. The trial court found the case was governed by a "condemnation clause" in the lease which reads as follows:

"13. *EMINENT DOMAIN.* If the whole of said premises or any part thereof which shall interfere with the use or enjoyment of said premises, shall be taken by eminent domain or other condemnation proceedings for public use, then this lease shall terminate from the time when possession of the whole or any such part thereof shall be required for such public use, and the rent shall be apportioned for the time of actual occupancy. Any such taking for public use shall not be deemed a breach of the Lessor's covenant for quiet enjoyment of said premises. Further, in such event, Lessee shall be entitled to recover against the condemnor or other party involved in such taking (and not against Lessor) all relocation costs and other expenses necessary to equip another building within a reasonable area for the continuation of Lessee's laundry business and

for the loss of use or profits which may be sustained by Lessee as a result of such taking."

The trial court concluded that the clause terminated any leasehold interest the lessee had in the premises, particularly in view of the fact that the lease was drawn with knowledge that condemnation was likely at some point during the term of the agreement.

■    There is an initial problem arising from dismissal of the lessee from the case as a result of granting the motion *in limine.* The motion was filed pre-trial.[1] In condemnation cases, the sole issue in the main proceeding is the fair market value of the property taken at its highest and best use without regard to the various sub-interests held in the property. Therefore, the value of any leasehold interest is not relevant in the primary proceeding, although proof of the existence of the lease is permissible to show what the best use is. *State Highway Com. v. Burk et al,* 200 Or 211, 243-44, 265 P2d 783 (1954). After just compensation for the entire parcel is determined, the various interest holders may prove, in an ancillary proceeding, the values of their respective interests and have the lump sum award apportioned accordingly. *Id.* Evidence of the value of the leasehold would be proper at that time.

The motion in this case, denominated a motion *in limine,* was in aim and effect a motion for partial summary judgment against the lessee. The lessor's position, predicated on the language of the lease, was that, *as a matter of law,* the lessee was not entitled to share in any award to the lessor and therefore, proof of the leasehold value was not relevant at any point. In the trial court's view, once the motion was granted, in the trial court's view there was no need for an ancillary proceeding because the lessee, the only sub-interest holder, was "out of the case, and it will go to trial between plaintiff and [the lessor]."

Had the lessor's motion been made in the primary proceeding to exclude proof by the lessee at that point on relevance grounds, it would have been properly granted

---

[1] In fact, after proof by the lessee of the value of its leasehold interest was excluded pursuant to this motion, the condemnor and lessor settled the damages dispute and no trial was held.

under *Burk.* After the motion was allowed, however, the court entered a judgment order dismissing the lessee from the case, just as if the motion were for summary judgment. We therefore treat it as such.

■ A tenant is generally entitled to share in the condemnation award made to the landlord to the extent of the value of the leasehold, although such a right may be waived by contractual agreement to the contrary. *Highway Com. v. Ore. Investment Co.,* 227 Or 106, 108, 361 P2d 71 (1961). In that case, the clause provided that, if the land were condemned for public use:

> "The Lessee *shall not receive any portion of any award* made to the Lessor, but the sole right of the Lessee shall be limited to a separate claim against [the condemnor] for damages to its business and personal effects, and the lessee hereby waives any claim or claims against the lessor * * *." (Emphasis added).

The court held that, although the clause was not entirely clear, it evidenced an intent that the lessee could not claim compensation for its leasehold from the award made to the lessor. 227 Or at 109.

The clause at issue here does not state directly that the lessee "shall not receive any portion of any award." The lessee's position is that the clause, read as a whole, indicates that the parties intended the lessee to have rights in the lump sum award. The first sentence, which provides that the lease shall terminate as of the date that possession is required, with rent to be apportioned accordingly, it is contended, simply terminates the rights and liabilities of the lessor and lessee under the lease. The balance of the clause grants participation in the award by permitting the lessee to recover relocation costs and damages for lost profits and loss of use against the condemnor.

The lessor contends that the weight of authority in interpreting clauses similar to the first sentence in this condemnation clause would hold that it terminates not only the lease agreement between the parties, but the leasehold interest of the tenant and thereby precludes participation in the lump sum award.

> "It has become customarily [*sic*] in drawing leases of valuable city property to insert a so-called 'condemnation

clause,' a provision that upon the taking by eminent do- main of the whole or part of the premises leased, the term shall come to an end. Under such a lease the tenant has no estate or interest in the property remaining after the taking to sustain a claim for compensation, although under some circumstances he may be entitled to recover for removal expenses, fixtures, or other improvements." 2 Nichols, *Eminent Domain,* § 5.23(2) (1979).

In *R&R Welding Supply Company v. City of Des Moines,* 256 Iowa 973, 129 NW2d 666 (1964), property was taken, and the lease provided:

"If the leased premises shall be wholly taken under eminent domain, then this lease shall terminate from the day the possession of the premises shall be required under the exercise of such power of eminent domain."

The court held that the lessee had no possessory rights or leasehold interest for which compensation was required. 129 NW2d at 670.

■    We decline to hold that the first sentence in this clause is sufficient *as a matter of law* to terminate the lessee's interest in the remaining term of its leasehold and to foreclose participation in the lump sum award. In the first place, clauses attempting to terminate leasehold interests are construed in favor of the lessee. 2 Nichols, *Eminent Domain,* § 5.23(2) (1979). Second, the clause, unlike that in *Highway Com. v. Ore. Investment Co., supra,* does not specifically exclude the lessee from such participation. A prospective lessee, reading this clause, might regard it simply as a statement of the legal effect of a taking (*i.e.,* that the lease agreement becomes inoperative as between the parties). As a matter of policy, therefore, we think it preferable to require that, if the parties intend that the lessee not share in any award made as compensation for the taking, that intent should be specifically spelled out. We do not hold, however, that the whole clause must necessarily be read to mean the opposite, *i.e.,* that the lessee has a right to participate in the award. We conclude rather that the clause is ambiguous and evidence of the intent of the parties must be sought elsewhere.

■    The lessee contends that the final portion of the clause precluding recovery from the lessor of relocation costs and damages for loss of use and lost profits gives the

lessee a right of participation in the award to the lessor. It argues that the right to use the premises and make a profit from the business is the essence of the leasehold and that authorization to recover those damages from the condemnor is tantamount to providing that the market value of the leasehold may be recovered from the lump sum award. The clause is not the proverbial "model of clarity," inasmuch as it seems to empower the lessee to recover costs and damages from the condemnor, a grant which, in the absence of some independent legal ground of entitlement, was clearly beyond the power of the parties to create by agreement.[2] The limitation does, equally clearly, foreclose the lessee from claiming *against the lessor* for its incidental and consequential damages. It would be unfair therefore to read that sentence to create by implication a right to recover such damages out of the lump sum award (which is in reality recovery from the lessor because it comes at the lessor's expense). It would be even more anomalous to hold that the limitation implies a right of the lessee to recover for the value of its leasehold. *See Waesche v. Redevelopment Agency,* 155 Conn 44, 229 A2d 352 (1967).

■     It follows that the clause read as a whole is ambiguous, and the intent of the parties must be determined from extrinsic evidence. As we stated, we are treating the motion *in limine* as a motion for summary judgment. The intent of the parties is a question of fact. *Timberline Equip. v. St. Paul Fire & Mar. Ins.,* 281 Or 639, 643, 576 P2d 1244 (1978). The trial court found that the parties negotiated the lease with reference to the urban redevelopment plan. The

---

[2] As a general rule, the costs of moving a business to another location are not a compensable element of damages for a taking. 4 Nichols, *Eminent Domain,* § 13.32(1) (1980); *Mitchell v. United States,* 267 US 341, 345, 45 S Ct 293, 69 L Ed 644 (1925). In the case of severance damages (payable where only part of a leased tract is taken), our Supreme Court held damages for loss of trade or business to be noncompensable:

"This is because, as stated in *People v. Ricciardi,* 23 Cal2d 390, 396, 144 P2d 799 '* * * it is only the value of, and damage to, the property itself, which may be considered. A particular business might be entirely destroyed and yet not diminish the actual value of the property for its highest and best use.'" *State Highway Com. v. Vella,* 213 Or 386, 393, 323 P2d 941 (1958).

It is true that evidence of the profitability of a business may be admissible to show the value of a particular parcel (e.g., its suitability to a particular business). *Mitchell v. United States, supra.* Such evidence is irrelevant, however, where there is no leasehold interest to be valued.

fact the plan was filed in 1971 is alleged in the condemnor's complaint, but there is no allegation that the lease was drawn in contemplation of a potential taking sometime during its term. If that is true, it creates a strong inference that the parties intended the leasehold interest to abate upon the taking and would explain the apparently favorable rental rate and terms. There is, however, no evidence in the record to permit such an inference. The judgment dismissing the lessee must therefore be reversed and the case remanded for appropriate ancillary proceedings, including the taking of evidence on the parties' intent in drafting the condemnation clause.

Reversed and remanded with instructions.