**LAND CLEARANCE FOR REDEVEL-
OPMENT AUTHORITY OF
KANSAS CITY, Missouri, Appellant,**

v.

**Frank S. RIDGE, et al., Boone County
National Bank, et al., Respondents.**

**No. WD 41475.**

Missouri Court of Appeals,
Western District.

Oct. 10, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 28, 1989.

Application to Transfer Denied
Jan. 10, 1990.

Leland H. Corley, Overland Park, for appellant, Land Clearance Authority.

Alvin D. Shapiro, Kansas City, for respondent, Boone County Nat. Bank.

Before SHANGLER, P.J., and TURNAGE and KENNEDY, JJ.

KENNEDY, Judge.

Land Clearance for Redevelopment Authority of Kansas City, Missouri, filed a petition to condemn for redevelopment purposes respondents' "leased fee interest" in a parcel of ground in downtown Kansas City known as the Lakenan Tract, owned by respondents in various undivided interests. The tract underlies the building most recently occupied in part by Dillard's Department Store, before that occupied by Macy's and earlier yet by John Taylor Dry Goods Company. Respondents' fee in the land is subject to a ground lease originally entered into by John Taylor Dry Goods Company in 1947, which by mesne assignments has come to rest in Real Properties Holding, Inc. Real Properties Holding, Inc., is a mere nominee, holding the leasehold interest for the benefit of M–Downtown Properties Company. M–Downtown has been chosen as redeveloper of the property including the Lakenan Tract, and it is for the benefit of M–Downtown that the condemnation proceeding has been initiated.

The sole question in the case is whether the condemning authority before it filed its eminent domain proceeding had made a reasonable good-faith attempt to secure the property by negotiated treaty with respondents. Respondents claimed it had not made a reasonable offer for the property sought to be condemned, and that the trial court was therefore without jurisdiction of the eminent domain proceeding. Section 523.010, RSMo 1986, requires the condemning authority to allege and show that "such [condemning authority] and the owners cannot agree upon the proper compensation to be paid". This showing is jurisdictional. *State ex rel. Weatherby Advertising Co., Inc. v. Conley*, 527 S.W.2d 334, 336 (Mo. banc 1975); *State ex rel. Missouri Highway and Transportation Commission v. Black*, 702 S.W.2d 525 (Mo. App.1985); *City of Cape Girardeau v. Robertson*, 615 S.W.2d 526, 530 (Mo.App. 1981); *State ex rel. State Highway Commission v. Pinkley*, 474 S.W.2d 46, 48–9 (Mo.App.1971). Respondents filed a motion to dismiss for want of jurisdiction.

The trial court held an evidentiary hearing on the motion to dismiss, and ruled that the condemning authority's offer of $190,000 for respondents' leased fee interest was unreasonably and unrealistically low. The trial court therefore dismissed the eminent domain proceeding, and Land Clearance has appealed.

We hold that the $190,000 offer was a reasonable offer for respondents' leased fee interest in the Lakenan Tract, and that the trial court erroneously ruled that it was without jurisdiction to proceed with the eminent domain proceeding.

The only valuation witness on the hearing on the motion to dismiss was Kevin K. Nunnink, a real estate appraiser of unchallenged credentials. He testified that he had appraised the respondents' leased fee interest at the request of Land Clearance and had fixed its value at $190,000. He had arrived at that valuation by the following method: He had computed the present value of the rentals to be paid in the future. The rentals to be received by respondents are $17,500 per year through the year 2012, then $20,000 per year until 2026 when the lease with its optional exten-

sions will expire. The present value of this stream of income he computed to be $145,000. To this figure he added the value of the landlord's reversionary interest, computed as follows: The present value of 5062–foot tract is $110 per square foot. Inflation would increase its value to $508 per square foot in 2026. The present value of the 2026 value (discounted by an 11% yield rate) would be $45,000. The sum of the present value of the income stream ($145,000) and the present value of the reversion ($45,000) is $190,000. This formula for the appraisal of a leased fee is accepted as sound. *Alamo Land & Cattle Co., Inc. v. Arizona,* 424 U.S. 295, 303, 96 S.Ct. 910, 916, 47 L.Ed.2d 1 (1976); *State ex rel. State Highway Commission v. Samborski,* 463 S.W.2d 896, 901–02 (Mo. 1971); *State by and through State Public Works Board v. Whitlow,* 243 Cal.App.2d 490, 52 Cal.Rptr. 336, 340–41 (1966); *Department of Public Works & Buildings v. Metropolitan Life Insurance Co.,* 42 Ill. App.2d 378, 192 N.E.2d 607, 611–12 (1963).

None of Nunnink's assumptions, his computations or his methodology is challenged by respondents. Respondents argued to the trial court, and argue here, that Land Clearance's offer should have been, at a minimum, the present value of the tract as determined by Nunnink, or $556,820. In other words, the offer should have been for the present value of the combined interests of the landowner respondents and the holder of the leasehold interest—even though the condemning authority already owns the leasehold interest by assignment and does not need to acquire it by eminent domain. Respondents recognize that this would involve bringing the owner of the leasehold interest into the lawsuit as a party, and that there would then be a proceeding for the apportionment of the condemnation damages between the fee owner and the holder of the leasehold.

If the condemning authority were condemning the entire fee in the property (the fee including both the leased fee and the leasehold interest), then the condemning authority would be held to pay in damages the reasonable market value of the whole. It would pay a single sum; it would then be up to the landlord and the tenant to settle the division thereof by agreement or by litigation. *See* Section 523.053, RSMo 1986.[1]

It is not required that a condemning authority condemn the entire fee in a parcel of land. It need not condemn more than it needs. This principle has been recognized in numerous of our own cases, as well as those of other jurisdictions. *Missouri Public Service Co. v. Argenbright,* 457 S.W.2d 777, 784 (Mo.1970); *Kamo Electric Cooperative, Inc. v. Baker,* 287 S.W.2d 858, 864 (Mo.1956); *State ex rel. State Highway Commission v. Stotko,* 365 S.W.2d 64, 66 (Mo.App.1963); *In re Real Property,* 77 Misc.2d 257, 353 N.Y.S.2d 142 (N.Y.Sup.1974); *City of Pullman, Whitman County v. Glover,* 73 Wash.2d 592, 439 P.2d 975, 977 (1968). In the above cases the respective uncondemned interests were not needed for the improvements, but the principle is applicable also in cases like the one before us where the uncondemned interest was needed for the improvement but had earlier been acquired by the condemning authority. *County of Los Angeles v. American Savings & Loan Ass'n,* 26 Cal.App.3d 7, 102 Cal.Rptr. 439 (1972); *State by and through State Public Works Board v. Whitlow,* 243 Cal.App.2d 490, 52 Cal.Rptr. 336 (1966).

Respondents say that if their leased fee interest can be condemned separately from the leasehold interest they are deprived of the contractual right to arbitrate

1. In the present case the lease provides for termination of the lease "[i]n the event that the fee title to the entire demised premises" is condemned, and provides for apportionment of the damages between landowner and tenant by arbitration. The lease would terminate by operation of law upon condemnation, even without such a provision in the lease. *Union Electric Co. v. Slay Bulk Terminals, Inc.,* 475 S.W.2d 136, 139 (Mo.App.1971); *Millhouse v. Drainage District No. 48 of Dunklin County,* 304 S.W.2d 54, 58 (Mo.App.1957). The contract provision for arbitration with respect to the apportionment of the condemnation proceeds is presumably valid and binding. *See State ex rel. State Highway Commission of Missouri v. St. Charles County Associates,* 698 S.W.2d 34 (Mo.App.1985).

the question of the apportionment of the condemnation proceeds with the leaseholder. If the entire fee were condemned appraiser Nunnink said its value (to be apportioned between the landlord and the leaseholder) would be $556,820; there is no other evidence of its value. Nunnink's method of arriving at the $190,000 value of respondents' leased fee interest has been described earlier in this opinion. After deducting the $190,000 from the value of the entire fee, the balance, Nunnink testified, would represent the value of the leasehold and would be payable to the tenant. Nothing in the evidence or in respondents' brief in this court challenges Nunnink's method of dividing the proceeds of the condemnation award if indeed the whole fee were being condemned. Arbitration might or might not result in more than $190,000 for respondents' leased fee interest. We repeat what we have said earlier, that the ultimate question in this case is whether the condemning authority's $190,000 offer for respondents' leased fee interest was reasonable. We hold that it was, and the trial court had jurisdiction to proceed with the eminent domain proceeding.

Judgment reversed and cause remanded to the trial court for further proceedings.

All concur.