BI–STATE DEVELOPMENT AGENCY OF THE MISSOURI–ILLINOIS METROPOLITAN DISTRICT, Plaintiff,

v.

Francis T. NIKODEM, Jr. and Raymond R. NIKODEM, Defendants/Respondents,

Ronald A. Leggett, Collector of Revenue, Defendant,

Edison Brothers Stores, Inc., Defendant/Appellant,

and

Other Unknown Individuals, Defendants.

No. 62141.

Missouri Court of Appeals, Eastern District, Division Four.

June 29, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 28, 1993.

Application to Transfer Denied Sept. 28, 1993.

Alan David Pratzel, St. Louis, for appellant.

Robert Denlow, Paul G. Henry, Robert Theodore Haar, Lisa A. Pake, St. Louis, for respondent.

CRAHAN, Judge.

Edison Brothers Stores, Inc. ("Lessee"), appeals from a judgment denying its motion for apportionment of the proceeds of condemnation of a parcel it leased from Francis T. Nikodem, Jr. and Raymond R. Nikodem ("Lessors") and granting Lessors' motion for distribution of the entire proceeds to them. Lessee contends that the trial court erroneously construed the automatic termination clause in the lease as depriving it of any compensable leasehold interest upon condemnation of the property. We affirm.

This appeal is an outgrowth of a condemnation proceeding instituted by Bi–State Development Agency ("Bi–State") in connection with the Metro–Link light rail project. The parcel of land condemned is located at Sixteenth and Poplar Streets in the City of St. Louis. At the time of condemnation, the parcel was used by Lessee as an employee parking lot. Lessee has had continuous possession of the property since 1969 pursuant to a written lease. The initial lease was with Lessors' predecessors-in-interest for a term of twenty years and provided for rent of $6,000 per year. In 1989, Lessors, having inherited the property from their parents, entered into an extension of the lease for a period of ten years, renewable at Lessee's option for ten additional years. The extension incorporated the terms of the original lease except for the term and the amount of rent, which was set at $20,800 per year.

Bi–State's First Amended Petition for Condemnation was filed against Lessors, Lessee, and certain governmental entities on June 10, 1991. On June 28, 1991, the court entered an Order of Condemnation and Appointment of Commissioners. After a hearing in September, 1991, the Commissioners awarded damages for the taking in the amount of $430,000. Lessors had sought an award of approximately $1.75 million. Both Lessors and Lessee filed exceptions to the award.[1] The amount of the

---

1. The disposition of the parties' exceptions is     not disclosed by the record. By statute, deter-

award was paid into the registry of the court by Bi–State on December 12, 1991, and the property was surrendered to Bi–State shortly thereafter.

On December 14, 1991, Lessors filed a Motion for Distribution, alleging that there were no other parties with an interest in the property and that they were therefore entitled to the full award. Lessee opposed the motion for distribution and timely filed a motion to apportion damages. The trial court scheduled the respective motions for an evidentiary hearing. On the date of the hearing, the court did not take testimony but heard argument on the single issue of whether the terms of the lease terminated Lessee's interest in the property upon condemnation and thereby precluded Lessee from asserting any claim to the condemnation proceeds. The lease provision at issue states, in pertinent part:

> In the event all of said premises shall be appropriated or taken under the power of eminent domain by any public or quasi-public authority, this lease shall terminate and expire as of the date of such taking; and the Lessor and Lessee shall thereupon be released from any further liability hereunder....

On May 19, 1992, the trial court entered an order awarding one hundred percent of the Commissioners' award to the Lessors. The court ruled that under the terms of the lease Lessee had no compensable leasehold interest upon condemnation of the subject property.

■ Before addressing the merits of Lessee's appeal, we must first address Lessors' contention that Lessee's "points relied on" do not comply with Rule 84.04(d). Lessee's points relied on are as follows:

THE TRIAL COURT ERRED IN HOLDING THAT THE TERMS OF THE LEASE BETWEEN APPELLANT AND RESPONDENT FORFEITED AS A MATTER OF LAW APPELLANTS' CONSTITUTIONAL RIGHT TO AN APPORTIONMENT OF THE CONDEMNATION PROCEEDS.

I. The Trial Court's Opinion Did Not Take Into Consideration A Lessee's Constitutional Right To Compensation And The Presumption Against Waiver

II. The Logic Of Termination Clauses And The Illogical Implications Of The Decision Below

III. The Trial Court's Holding Is Unsupported By Relevant Missouri Cases

IV. The More Well–Reasoned Authorities In Other Jurisdictions Support Reversal Of The Trial Court's Decision

As Lessors correctly observe, such points relied on do not satisfy the requirements of Rule 84.04(d) that the points set forth "wherein and why" the trial court erred. *See Thummel v. King,* 570 S.W.2d 679, 684–690 (Mo. banc 1978). Instead, Lessee has simply stated a general proposition that the trial court's action was error but fails to state why the trial court's action was error. Lessee then states four abstract propositions of error, the first of which could arguably be construed as a statement of the legal reason Lessee maintains the trial court's ruling was error (*i.e.,* the *why* component) and the balance of which are completely uninformative with respect to the nature of Lessee's complaint. As Lessors point out, it is not clear whether Lessee is attempting to state one point or four but there is plainly no reference to the lease itself or any other material which would support the ruling for which Lessee contends (the *wherein* component). *See Thummel,* 570 S.W.2d at 685.

As the Missouri Supreme Court explained in *Thummel* the requirements of Rule 84.04(d) are rooted in sound policy. The functions of the points relied on are (1) to give notice to the opposing parties of the precise points which must be contended with and answered on appeal and (2) to inform the court of the issues to be resolved on appeal. *Id.* at 686. Absent compliance with Rule 84.04(d), there is a danger that the court may unfairly interpret

mination of claimants' interests in the award is an ancillary but separate proceeding and is sep-

arately appealable. § 523.053 RSMo.1986.

the thrust of the appellant's contention differently than the opposing party (or differently than the appellant). If so, the court may unwittingly become an advocate for one side or the other or decide the case without the robust advocacy essential to the proper exercise of the judicial function. *Id.*

Having determined that Lessee's points relied on are not in compliance with Rule 84.04(d), we are confronted with the problem of what to do about it.[2] Our preference is to address the merits of the appeal whenever possible. Aside from pointing out the difficulty encountered in preparing a responsive brief, Lessors have not suggested that it would be inappropriate to address the merits here. Based on our review of the argument portion of Lessee's brief, it appears that the single issue presented is the legal effect of the clause quoted above, a question fully briefed by Lessors. Therefore, solely as a matter of discretion, we will proceed as if that issue had been properly presented in the points relied on. Our consideration will be limited, however, to the arguments recognized and addressed in Lessors' brief. Such procedure should minimize any possible prejudice to Lessors and avoid the dangers identified in *Thummel.*

Lessee maintains that the meaning and legal effect of the termination clause at issue is a question of first impression in Missouri. According to Lessee, the trial court erred in interpreting the clause as a waiver or forfeiture of its constitutional right to compensation for the value of its leasehold interest. According to Lessee, such interpretation is contrary to well-established precedent that courts must indulge in every reasonable presumption against waiver of fundamental constitutional rights and that a finding of such a waiver must be established by clear and convincing evidence. Further, Lessee maintains that interpretation of the termination clause as a waiver or forfeiture of its constitutional right to compensation would logically bar compensation to all leaseholders of condemned property inasmuch as it has long been established that condemnation divests all rights of private property in the condemned property and has the effect of terminating any further obligation to pay rent. Finally, Lessee maintains that the trial court's ruling is not supported by relevant Missouri case law and is contrary to the more well-reasoned authority in other states.

Although the meaning and effect of the precise language at issue does appear to be a question of first impression in Missouri, the principles dispositive of Lessee's contentions are not. Lessee's claim to compensation is predicated on the Fifth and Fourteenth Amendments to the United States Constitution and Article I, §§ 10 and 26 of the Missouri Constitution of 1945. The Fifth Amendment guarantees that no person shall be deprived of property without due process of law, nor shall private property be taken for public use without just compensation. Under the Fourteenth Amendment, these protections apply to actions taken by the states. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). Likewise, Article I, Section 10 of the Missouri Constitution provides that "no person shall be deprived of life, liberty or property without due process of law" and Article I, Section 26 requires that "private property shall not be taken for public use without just compensation."

As applied to tenants in condemnation proceedings, these provisions give rise to two distinct constitutional rights: the right to due process of law and the right to compensation for the value of the leasehold interest at the time of condemnation. *J.B. Millhouse v. Drainage District No. 48 of Dunklin County*, 304 S.W.2d 54, 57 (Mo. App.1957); *Seliga Shoe Stores, Inc. v. City of Maplewood*, 558 S.W.2d 328, 331–32 (Mo. App.1977). The right to due process in-

---

2. In *Thummel,* the supreme court announced a preference for screening the briefs upon submission, a practice that has proven unworkable on a court as busy as this one. We note that the deficiencies in Lessee's points relied on were raised in Lessors' brief, but were ignored in Lessee's reply brief and no attempt was made to correct them.

cludes the tenant's right to notice and an opportunity to be heard. *Id.* There is no contention that Lessee was deprived of either notice or an opportunity be heard at any stage of this proceeding. Rather, Lessee's complaint is that it was deprived of its right to just compensation for its leasehold interest.

It is well established, however, that not every person who can properly be designated a lessee is entitled to damages upon the taking of his interest in condemnation. *Seliga Shoe Stores, supra,* 558 S.W.2d at 332. For example, one remaining in possession after a lease has expired by its own terms has no constitutional right to compensation despite evidence of mutual satisfaction by landlord and tenant supporting an expectation of renewal. *Millhouse, supra,* 304 S.W.2d at 58–59. Likewise, one failing to execute a renewal of a lease on the terms specified therein prior to the expiration of the original term has no compensable interest in a condemnation award. *State ex rel. State Highway Commission v. Demarco,* 445 S.W.2d 379, 385–87 (Mo.App.1969).

In support of its position, Lessee relies upon the following quotation from *Alamo Land & Cattle Co., Inc. v. Arizona,* 424 U.S. 295, 303, 96 S.Ct. 910, 916, 47 L.Ed.2d 1 (1976):

> It has long been established that the holder of an unexpired leasehold interest in land is entitled, under the Fifth Amendment, to just compensation for the value of that interest when it is taken upon condemnation....

■ As Lessors point out, however, the trial court's judgment does not contravene this principle. The issue presented is not whether a holder of an unexpired leasehold interest is entitled to compensation; it is whether Lessee held such an unexpired leasehold interest at the time of the condemnation, thereby giving rise to a right to compensation.[3] On that point, the lease

itself is express and unambiguous. The lease plainly provides that in the event the property is appropriated under the power of eminent domain, "this lease shall terminate and expire as of the date of such taking; ..." In other words, the lease terminated and expired by its own terms upon condemnation by Bi–State, thus terminating any compensable interest in the condemned property.

A compensable interest in condemnation has been defined as an interest consisting "of some definite right of domination in and over the physical thing, such as the right of user [sic], or exclusion, or disposition." *Millhouse, supra,* 304 S.W.2d at 58. Here, by the express terms of the lease upon which Lessee bases its claim of compensation, there can be no claim that Lessee enjoys any right of use, exclusion or disposition of the property from and after Bi–State's exercise of eminent domain. Nowhere in its brief does Lessee contend otherwise. Rather, Lessee urges that the trial court improperly construed the termination clause as a waiver or forfeiture of its constitutional right to compensation. Such contention is a misstatement of the trial court's holding and a misapprehension of the concept of "forfeiture."

The trial court made no finding of waiver or forfeiture; it found that Lessee had no compensable leasehold interest in the property. Both "waiver" and "forfeiture" presuppose the existence of some compensable interest. One cannot waive or forfeit a right that does not exist. "Forfeiture" has been defined as a taking away of some preexisting valid right without compensation, as contrasted with a provision terminating the agreement upon certain conditions. *L & K Realty Company v. R.W. Farmer Construction Company,* 633 S.W.2d 274, 279 (Mo.App.1982). As discussed above, Lessee makes no claim that the lease agreement gives it any right of

---

3. The *amount* of compensation due, if any, would be measured by the "bonus value," if any, of the remaining term of the lease—*i.e.,* the amount by which the market value of the remaining term exceeds the contracted rent. *See Land Clearance for Redevelopment Corp. v. Doernhoefer,* 389 S.W.2d 780, 786 (Mo.1965). In

view of the disposition below, there has been no determination of the "bonus value," if any, of Lessee's interest and the issue is not before us in this appeal. We will assume for purposes of this opinion that the leasehold, if not terminated by the language at issue, would have some "bonus value."

use, disposition or dominion over the property upon its acquisition by eminent domain. The agreement merely provides for termination upon the occurrence of that condition. Thus, as the trial court correctly ruled, Lessee's interest in the property expired by its own terms and it had no compensable interest upon condemnation by Bi–State.

■ Lessee urges, nevertheless, that such determination would effectively preclude recovery by any holder of a leasehold interest acquired by eminent domain because all leasehold interests terminate upon condemnation. This does not follow. It is true that condemnation of the entire property ordinarily terminates a lease by operation of law, divesting all rights of private property in the parcel and extinguishing any further obligation to pay rent. *See Biddle v. Hussman,* 23 Mo. 597, 600 (1856); *Land Clearance For Redev. Auth. v. Ridge,* 781 S.W.2d 104, 106 n. 1 (Mo.App. 1989) (dicta). But this is beside the point. The issue is not *whether* the leasehold is terminated upon condemnation but *why.* Absent a termination clause, the lease terminates because the leasehold interest has been appropriated for public use, thus giving rise to a right of compensation. With a termination clause such as the one at issue here, the leasehold interest terminates and expires by the terms of the very contract that created the interest in the first place. Thus, no property interest of the lessee has been appropriated for public use and there is no *constitutional* right to compensation.

Lessee urges, however, that *State v. St. Charles County Associates,* 698 S.W.2d 34 (Mo.App.1985) establishes a requirement that the lease contain an express waiver of the right to participate in the condemnation award before a lessee will be denied relief. Noting that the lease does not in this instance expressly mention disposition of the proceeds of any condemnation award, Lessee reasons that the lease must be interpreted to permit its participation. Lessee misinterprets the holdings in *St. Charles County Associates.* In that case the court considered the interest of two categories of tenants of the condemned property. The

first category, lessees claiming a right to tenancy for a specific term, were held not to have complied with the requirements of § 441.060(2) RSMo.1978, resulting in a month-to-month tenancy which did not constitute a compensable interest in the property. 698 S.W.2d at 35–36. The other claimant, a subtenant of a different lessee of a separate portion of the property, claimed under a lease that expressly assigned his interest in any award or settlement for condemnation to his sublessor. The court found such provision to be valid and controlling, thus depriving the subtenant of any right to participate in the condemnation proceeds. 698 S.W.2d at 36.

The trial court's ruling in this case is not inconsistent with *St. Charles County Associates.* Implicit in the court's discussion of the latter holding is the assumption that the sublessee would otherwise have had a compensable interest in the property. There is no mention of any provision that the lease would terminate or expire upon condemnation such as is at issue here. Rather, although the court found it unnecessary to set forth the terms of the sublease at any length, there does not appear to be any question that the condemnation deprived sublessee of the balance of his term and that sublessee therefore had a compensable interest in the property. *Id.*

The holding of *St. Charles County Associates* is that one who holds a compensable interest in property may nonetheless contractually assign or waive such interest by express language in the lease and that such a provision is valid and enforceable. *Id.* See also *State v. Jim Lynch Toyota,* 835 S.W.2d 421, 424 (Mo.App.1992) (specific provisions of a lease setting forth respective rights of the parties in the event the property is condemned are valid and controlling). Conversely, *Land Clearance For Redev. Auth. v. Ridge, supra,* appears to recognize in dicta that one who has no compensable interest in the property because of a termination clause may nonetheless be granted a *contractual* right to participate in the proceeds, which is equally valid and enforceable. 781 S.W.2d at 106 n. 1. In such instance, the right to participate in the condemnation proceeds does not

arise from any constitutionally protected interest in the property. It arises by virtue of an affirmative grant in the lease contract. Lessee claims no such contractual right to participate in the award in this case and, in fact, concedes that the lease makes no provision for distribution or participation in the condemnation proceeds whatsoever. Contrary to Lessee's contention, the absence of any contractual provision specifically denying any right to participate in the proceeds cannot be construed as affirmatively granting such a right to a lessee who has no compensable interest in the property. Rather, a lessee seeking to participate in condemnation proceeds must prove either a compensable interest in the property or an affirmative grant of a contractual interest in the proceeds. Where the lease expressly makes provision for distribution of the proceeds, the lease is controlling. Where the lease is silent about apportionment of the proceeds, the lessee must show a compensable interest in the property. As discussed above, Lessee's interest in this property expired by its terms upon condemnation by Bi–State. Thus, Lessee has no right to participate in apportionment of the proceeds.

Finally, Lessee urges that the "better reasoned" authorities from other states support its position that a termination clause such as the one at issue here does not preclude lessees from participating in condemnation proceeds. Lessee acknowledges that such cases are not binding upon us and should be followed only to the extent that they are persuasive and based on sound principles and good reason. *Missouri TP., Chariton County v. Farmers' Bank*, 328 Mo. 868, 42 S.W.2d 353, 356 (1931). In view of our determination that the principles dispositive of Lessee's contention are already well established in Missouri case law, authorities from other states are of marginal value, at best. Nevertheless, we have examined the authorities cited by the parties (and others) and conclude that the overwhelming weight of such authorities is in accord with our analysis and that the cases cited by Lessee are distinguishable.

Lessee principally relies on three cases: *Maxey v. Redevelopment Authority of Ra-*cine, 94 Wis.2d 375, 288 N.W.2d 794 (1980); *Holland v. State*, 554 So.2d 727, 730 (La. 1989); and *Urban Renewal Agency, Etc. v. Wieder's, Inc.*, 53 Or.App. 751, 632 P.2d 1334, 1337 (1981). In *Maxey*, there was no language terminating the lease in the event of condemnation. Rather, the lease at issue in *Maxey* merely provided in relevant part that, "such condemnation shall terminate the further liabilities of both the lessors and lessees under this lease." *Maxey*, 288 N.W.2d at 806. Such clause was held merely to terminate the respective liabilities of the lessor and lessee and not to extinguish lessee's right to participate in the condemnation award. *Id.* at 807. Nothing in *Maxey* purported to address the effect of language terminating and extinguishing the leasehold interest, which is the issue presented here. *Holland* involved a claim for business losses claimed by a lessee by reason of condemnation. The state conceded that the lessee's right to recover such losses was expressly provided for in the Louisiana Constitution but claimed that a provision in the lease terminating the leasehold in the event of appropriation by eminent domain barred recovery. Noting that the lease also reserved to lessee the right to participate in any award made specifically for loss of business opportunity or goodwill, the court allowed recovery based on the express provision for recovery of such losses in the state constitution. *Holland*, 554 So.2d at 729–31. In *Urban Renewal Agency*, the clause at issue provided for termination of the lease in the event of condemnation but purported to reserve to the lessee the right to recover certain relocation costs and lost profits from the condemnor. 632 P.2d at 1335. The court did not dispute the weight of authority to the effect that a termination clause such as that presented here terminates the leasehold interest and thereby precludes participation in the condemnation award. 632 P.2d at 1336–37 (citing *R & R Welding Supply Company v. City of Des Moines*, 256 Iowa 973, 129 N.W.2d 666, 670 (1964), and Nichols, *Eminent Domain*, § 5.23(2) (1979)). However, in light of the ambiguity created by the reservation of rights to the lessee, the court held the matter unsuitable for disposition at the pre-

trial stage and remanded to permit the parties to introduce evidence of intent. 632 P.2d at 1337–38.

Far more representative of the rule followed in most jurisdictions, and directly on point, is *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371 (Colo.1990), cited by Lessors. In *Kylberg*, the lease provided:

> If, during the term of this Lease Agreement, the entire Leased Premises shall be taken as a result of the exercise of the power of eminent domain or sold to the governmental authority in lieu of the condemnation ..., this Lease Agreement shall terminate and the rent shall be apportioned as of the date the governmental authority takes possession of the Leased Premises pursuant to such Proceeding.

799 P.2d at 373. Reversing a lower court ruling that the foregoing clause was ambiguous and that the lessee was entitled to participate in the award, the Colorado Supreme Court held that the clause was "not reasonably susceptible to an interpretation other than that the lease agreement 'terminates' when the government authority takes possession." 799 P.2d at 375. The fact that the parties disagreed about the legal effect of the clause did not thereby render the clause ambiguous. *Id.* Reviewing authoritative legal commentary and cases from numerous jurisdictions, the court found the clause to be a typical "condemnation clause" or "automatic termination clause" which has the effect of destroying the lessee's leasehold interest, thereby terminating any interest in the condemned property and foreclosing participation in the condemnation proceeds. 799 P.2d at 375–76.

Lessee seeks to distinguish many of the cases collected in *Kylberg* on the basis of variations in the clauses at issue but we do not believe the precedents cited can be so easily dismissed. Our own review of the cases cited in *Kylberg* and others discloses virtually uniform agreement that a clause providing that the lease will terminate or expire upon condemnation has the effect of terminating any compensable interest in the leasehold and, absent additional language susceptible of interpretation as an affirmative grant of a contractual right to participate in some manner in the condemnation award, forecloses any participation in the condemnation proceeds. *See* cases collected in *Kylberg*, 799 P.2d at 376; *See also Evans Prescription Pharmacy v. County of Ector*, 535 S.W.2d 704 (Tex.App. 1976); *R & R Welding Supply Company, supra; Waesche v. Redevelopment Agency*, 155 Conn. 44, 229 A.2d 352, 354 (1967); Nichols, *The Law of Eminent Domain*, (Rev.3d Ed.1993), Vol. 2, § 5.06[2] and Vol. 5, §§ 12D.04[2], 12D.04[4]; *Restatement (Second) of Property*, § 8.2 and comment f, p. 285; 27 Am.Jur.2d, *Eminent Domain*, § 250, p. 22; 11A McQuillin, *The Law of Municipal Corporations*, § 32.85 (3d Ed. 1991). None of the cases cited by Lessee or disclosed in our own research holds otherwise.

For the foregoing reasons, the judgment of the trial court is affirmed.

CARL R. GAERTNER, P.J., and CRANE, J., concur.